GREGG v. BANK OF COLUMBIA.

1. SALE—CONVERSION.—A BANK to which a draft with bill of lading attached for goods is sent for collection with instructions, if not paid to hold and notify, has no right to sell the goods to a third party without notice to owner.

2. IBID.—IBID.—CLAIM AND DELIVERY.—The pledgor of a chattel cannot ordinarily maintain an action in claim and delivery for the articles pledged without first paying or tendering the amount of debt secured and demand of return of property pledged, but where the pledgor had no notice of conversion and application of proceeds to his debt until after conversion, he may maintain action for damages for conversion without tender and demand.

3. DAMAGES—CONVERSION.—In *some* cases of conversion the measure of damages *may* be the highest market value of the goods up to the time of trial.

Before PURDY, J., Richland, November term, 1904. Affirmed.

Action by Joseph Gregg against Bank of Columbia. From judgment for plaintiff, defendant appeals.

*Mr. D. W. Robinson,* for appellant, cites: *As to measure of damages:* 2 Green. Ev., sec. 276; 28 Ency., 2 ed., 718, 721; 26 Ency., 1 ed., 824-5; 126 N. Y., 152; Jones on Pledges and Col. Sec., sec. 574; 13 S. C., 19; 26 S. C., 269; 39 S. C., 355; 39 S. E., 202. *Negotiability of and transfer of title by bill of lading:* 25 S. C., 222; Jones on Pledges and Col. Sec., secs. 255, 261, 262, 264; 1 Pet., 446; 14 Wall., 98; 4 S. C., 387; 23 S. C., 340; 101 U. S., 557; 91 U. S., 618; 37 S. E., 123; 33 S. E., 822; 50 L. R. A., 799; 49 L. R. A., 683; 26 So., 499; 7 L. Ed., 216; Smith on Merc. L., 177; Chit. on Con., 435; 1 C. & P., 53; 23 S. C., 340; 50 L. R. A., 779; 37 S. E., 123. *Title becomes absolute in bank upon refusal of consignee to accept draft endorsed and discounted:* 4 Ency., 2 ed., 548; 48 N. Y., 3; 4 N. Y., 502; 26 So., 499; 91 U. S., 618; 12 Pick., 300; 37 S. E., 123; 4 N. Y., 502; 12 S. C., 300. *If bill of lading with draft*

*attached be treated as a mortgage the title becomes absolute in mortgagee after default in accepting draft:* 26 So., 499; 20 S. C., 20, 520; 26 S. C., 112; 32 S. C., 368; 48 S. C., 407; 51 S. C., 43; 64 S. C., 193. *When trover lies:* 26 Ency., 1 ed., 763; 28 Ency., 2 ed., 554; 21 Ency. P. & P., 1014; 28 Ency., 2 ed., 656, 659, 660, 663, 666, 676; 26 Ency., 1 ed., 744, 757, 764; 21 Ency. P. & P., 1037; 119 U. S., 561; 35 N. C., 392, 432. *Plaintiff may have sued in assumpsit or for damages for conversion:* 12 S. C., 50; 21 Ency. P. & P., 1022, 1024; 26 Ency., 1 ed., 763, 792, 798; 15 Ency., 2 ed., 1113, 1114, 1115; 5 Pick., 290; 35 N. C., 392; Jones on Pledges & Col. Sec., sec. 580; 28 Ency., 2 ed., 739. *Tender and demand:* 26 Ency., 1 ed., 785; 1 S. C., 444; Jones on Pledges & Col. Sec., secs. 554, 556. *Rescision or sale:* Jones on Pledges, 571; 61 S. C., 455; 63 S. C., 297; 1 Strob., 400; 56 S. C., 513; 26 L. R. A., 177. *Duty of collecting bank:* 26 S. C., 611; 3 Ency., 2 ed., 805; 31 Conn., 296; 91 U. S., 92; 26 S. C., 611; Jones on Pledges, 573. *Accounting in equity:* 26 Ency., 1 ed., 792-5; 15 Ency., 2 ed., 1115. *Rights of mortgagee:* 51 S. C., 43; 26 S. C., 112; 20 S. C., 520; 26 So., 499.

*Messrs. Barron & Ray,* contra, cite: *Measure of damages is highest price:* 18 S. C., 179; Jones on Pledges., secs. 750-1. *When demand not necessary:* Law of Mtgs., Boone, sec. 295; Jones on Pledges, sec. 748; 22 Ency., 2 ed., 874, 876. *Bank holding draft for collection has no authority to sell:* 75 Am. Dec., 137; 55 Mich., 357; 1 Wall., 166. *Owner may pursue property or sue for proceeds:* 60 S. C., 107. *As to ratification:* 1 Ency., 2 ed., 1195, 1199, 1187, 1189. *Agent is liable to principal for difference between price at which he sold and at which he could have sold:* 67 S. C., 468; Story on Law of Sales, sec. 98.

October 17, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The Bank of Columbia, defendant in this action, appeals from a judgment recovered against it

for damages for the conversion of three carloads of corn. The exceptions charge error in refusing to grant a nonsuit, in the admission of evidence, in the charge to the jury, and in refusing a new trial.

A brief statement of the evidence will so show the true relation of the parties and the rights and duties which grew out of that relation that the case will be relieved of much apparent complication. The business of the plaintiff, Joseph Gregg, in the city of Chicago, was to ship grain, usually on orders, but occasionally to brokers, for sale on his own account. The three carloads of corn with which we are now concerned had been bought on order, but the orders were cancelled before shipment, and thereupon the plaintiff sent them to J. D. Miot, a grain broker, of Columbia, S. C., and made separate drafts on him with bills of lading attached for each car of corn, amounting in the aggregate to $1,238.05. These drafts were in favor of Wanzer & Co., a large brokerage house of Chicago, who advanced to Gregg the amount of the drafts, and who in turn placed the drafts, with the bills of lading attached, to their own credit in American Trust and Savings Bank of Chicago. This bank sent the drafts and bills of lading to the Bank of Columbia, with instructions to collect and remit proceeds for its credit to National Bank of the Republic in New York. Across the left end of each of the drafts was the following instruction: "Do not surrender documents until draft is paid. If not paid promptly notify ————, Chicago, giving reasons and hold for instructions." The Bank of Columbia received the papers on June 7, 1901, and after several refusals by Miot to accept or pay the drafts, returned them to the Chicago bank. A second time they were sent for collection, and returned after a like unsuccessful effort to collect. Upon receiving them a third time, after again presenting them to Miot, the Bank of Columbia sold the corn to a third party on July 25, 1901, for the face of the drafts, storage charges and freight, and remitted the amount of the drafts, less exchange, to National Bank of the Republic for credit of American Trust

and Savings Bank. The plaintiff had no notice of the sale until receipt of a letter from Miot, dated August 7, 1901, advising of his inability to deliver a carload of corn he had contracted to sell, because all the corn had been already sold by the Bank of Columbia. In the meantime corn had advanced in price. The plaintiff's claim was for $720, alleged to be the difference between the price realized for the corn and the highest market price from the date of the alleged conversion to the time of the trial. The defendant endeavored to prove as a material fact that the intention of Gregg, the drawer, was not, as he alleged it was, to make Miot, the drawee, merely his broker to sell the corn, pay the drafts and account for the sale, but that Miot should buy the corn and become himself absolute owner on payment of the drafts. Assuming that the evidence left this issue of fact in doubt, it was quite immaterial, in view of the undisputed documentary evidence, what the original position and rights of Miot were, because, if the jury had taken defendant's view, when Miot refused payment of the drafts, which was the condition of his acquiring ownership and possession of the corn, the ownership stood as if the drafts had never left the bank in Chicago. Although the drafts were returned to the Chicago bank and re-sent for collection several times, the original instruction to hold and notify in case of non-payment was not only not altered, but was each time re-sent with the papers. If Gregg sold the corn to Miot on condition that he should pay the amount of the drafts as the purchase price, as the defendant contends he did, then he was bound to take the price agreed upon from Miot, notwithstanding a rise in the price of corn, but the Bank of Columbia had no right to bind him to sell to another at the same price or at any price. While the Bank of Columbia no doubt acted in good faith, the documents in its hands afforded no justification for the sale of the corn.

The Chicago owner of the corn had through the drafts and bills of lading invested the Bank of Columbia with legal

authority to offer the corn to Miot, whether as purchaser or as agent of the plaintiff, is not material, but when he refused to take it, the authority of the bank was at an end, and it had no more right to sell the corn to another than if it had never had the drafts. Such a sale by the bank was, therefore, as much an unwarranted conversion of the property of the owner as a sale made by a stranger would have been. This was not a case where an emergency had arisen. There was no danger of the loss of the corn. It is plain that even the Chicago bank or Wanzer & Co. had no right to order a sale of the corn, if Gregg was the owner, without notice to him and demand on him for payment of his debt, and surely the defendant, a mere collecting agent, had no right to sell without notice to any of the parties concerned. Therefore, the Circuit Judge might well have charged the jury that the papers held by the Bank of Columbia gave it no authority to sell, and the defendant certainly could not complain when it was left to the jury to say whether, under all the testimony, including the papers, the defendant bank had such authority, and if they found it had no authority, then it would be guilty of conversion.

Another issue of fact was whether the plaintiff, in drawing the drafts on Wanzer & Co., with the bills of lading attached, and receiving the amount expressed on their face from Wanzer & Co., actually sold the corn or only pledged it as security for money loaned. This issue was plainly stated to the jury, with the manifestly correct instruction if the plaintiff had unconditionally parted with the ownership and right of possession, he could not recover for the conversion.

But the most serious question is, whether the plaintiff could maintain an action for conversion, even if it is conceded he had not parted entirely with the ownership of the corn, but merely pledged it for money borrowed from Wanzer & Co. by endorsing the bills of lading. The defendant made this question by a motion for nonsuit and by appropriate requests to charge. The ordinary relation of pledgor and pledgee imports general ownership of the pledge

by the pledgor, and a special property or lien of the pledgee accompanying the possession. Since an interest in property is not sufficient to sustain an action for conversion, unless there is also the right to possession, and since that right is in the pledgee and not the pledgor, the latter cannot, as a general rule, maintain such an action until his right of possession has been regained by payment or tender of the debt secured by the pledge, and demand for the return of the property. There was no proof in this case that plaintiff made a tender to Wanzer & Co., or the Chicago bank, or the defendant, or that he demanded a return of the property from any of them. There was evidence, however, to the effect that the defendant paid Wanzer & Co.'s debt to the Chicago bank, which credited the amount to Wanzer & Co. and thus paid the debt of the plaintiff to that firm. The payment was made by remitting the proceeds of the alleged unauthorized sale, and manifestly if the plaintiff had with knowledge of the conversion acquiesced in this application of the proceeds for his benefit, he would be held to ratify the sale. But, as we have seen, there was evidence that the plaintiff did not know until after the 7th of August of the sale, which had been made on the 25th of July. When the defendant gave notice it had sold the corn, this was notice it was out of its power, or that of the Chicago bank, or Wanzer & Co., to surrender it to plaintiff. This notice imported that tender and demand would be futile, and that the only remedy of plaintiff would be to recover damages for the conversion, in estimating which the benefits received by the plaintiff must be taken into the account. *Gage* v. *Allison,* 1 Brev., 495; Jones on Pledges, sec. 748; 22 A. & E. Ency. Law, 879.

The plaintiff having the remedy of a suit at law for conversion, an equitable action for accounting, which defendant insists was the proper action, could not have been maintained. *Lacombe* v. *Forstall,* 123 U. S., 562, 31 L. Ed., 255. The equitable doctrine of accounting had no application, therefore, and was stated by the Circuit Judge to indicate that if the jury reached the conclusion the Chicago bank

or Wanzer & Co., as pledgees, in order to collect their money authorized the sale made by the Bank of Columbia, the remedy then would have been on the equity side of the Court to obtain an accounting, and this action could not be maintained. This instruction was not unfavorable to defendant, and clearly was a correct statement of the law.

The defendant next submits, if it was liable at all, the jury should have been confined in estimating damages to the value of the property at the time of conversion, and it was error to charge, "In a case of conversion of personal property the jury may give the highest market value up to the time of the trial." It will be observed the instruction was not that the plaintiff in all cases of conversion is *entitled* to recover the highest market value up to the time of trial, but that the jury *may* adopt that as the measure of damages. This was a correct statement of the law as laid down in this State. *Carter* v. *DuPre,* 18 S. C., 179. The just measure in some circumstances may be the value at time of conversion, as was considered by the Court in *Reynolds* v. *Witte,* 13 S. C., 9; in other circumstances the just measure might clearly be the highest market value; and the jury may adopt the one or the other, according to their view of the justice of the case. No doubt, if either measure were capriciously adopted, the Circuit Judge would have the power to relieve against the injustice by ordering a new trial. For instance, if the conversion were made under a *bona fide* claim of right without grievous wrong or oppression, and it appeared reasonably certain the plaintiff would have sold about the time of the conversion, manifest injustice would be done to make an enormous sporadic rise in the market price, due to abnormal conditions occurring long after the conversion, the measure of damages. On the other hand, to give only the value at the time of conversion would, in some circumstances, be equivalent to requiring the owner of the property to sell his property at a time and for a price fixed by a wrong-doer. In this case, the jury took as a basis

the approximate if not the exact value at the time of the conversion, and the defendant has no reason to complain.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

The Chief Justice *did not participate in this opinion because of illness.*