COOPER-SMITH CO. v. BELL (three cases)

(134 S. E., 658)

1. PLEDGES.—An oral pledge of personalty is as much within the protection of Civ. Code 1922, § 5628, relating to sales of property under pledge, mortgage, or hypothecation, as is a written hypothecation.

2. PLEDGES.—Cotton warehouse receipts, given defendant as security for debt and receipt given by defendant, *held* to constitute a written pledge of the cotton as affecting sale thereof, under Civ. Code 1922, § 5628.

3. PLEDGES.—Pledgee converting pledged cotton is liable in jury's discretion either for market value at time of conversion or any price above that up to highest price reached between date of sale and date of trial.

4. PLEDGES.—Conversion of pledged cotton by pledgee *held* not a satisfaction of debt secured, pledgor being entitled to credit only for just price of cotton.

Before SHIPP, J., Horry, July, 1923. Reversed and remanded for new trials.

Three actions by the Cooper-Smith Company against R. L. Bell, Della Bell, as administratrix of the estate of J. L. Bell, deceased, and O. J. Bell. From judgments for plaintiff, defendants appeal.

*Messrs. Sherwood & McMillan,* for appellants, cite: *Sale of personal property under pledge:* Civ. Code, 1922 Sec. 5628. *Sale of personal property under oral pledge controlled by statute:* 129 S. C., 338; 123 S. E., 859; 124 S. C., 166; 117 S. E., 354; 118 S. C., 141; 110 S. E., 115; 97 S. C., 166. *Unauthorized disposition of pledged property is conversion:* 129 S. C., 338; 123 S. E., 861. *Wrongful transfer of pledged property amounts to satisfaction of debt:* 31 Cyc., 864. *Sale of pledged property to be at public auction after notice:* 20 S. C., 179. *"Hypothecation" defined:* 4 Words & Phrases, 3377. *Absolute property in pledge not vested in pledgee:* 97 S. C., 182. *Case distinguished:* 42 S. C., 40.

*Messrs. H. H. Woodward and W. F. Stackhouse,* for respondent, cite: *Sale of personal property under pledge:* Civ. Code, 1922, Sec., 5628. *Sale of personal property under oral pledge not controlled by statute:* 42 S. C., 40. *Rights of pledgor where pledged property wrongfully transferred:* 72 S. C., 458.

October 1, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

These cases were tried together on circuit in this Court. Each is an action upon an account for goods sold and delivered. The account against R. L. Bell is $1,123.72; against Della Bell as administratrix of the estate of J. L. Bell, $1,212.50; and against O. J. Bell, $894.92. The accounts are dated prior to January 1, 1921. The cases depend upon precisely the same facts and involve the same

principles of law.  For convenience therefore we will consider the case of R. L. Bell.

On January 1, 1921, R. L. Bell owed the plaintiff quite a large account and plaintiff was pressing.  On February 8, 1921, he had stored in the Planter's Warehouse, of Conway, 25 bales of cotton, for which he had received from the warehouse company some kind of a receipt.  It is not set forth in the record and appears to have been an exceedingly informal receipt, ticket, or stub.  On that day he delivered it to Cooper-Smith Company, the plaintiff, and received from them a paper in form as follows:

"February 8, 1921.  Received of Mr. R. L. Bell, of Wampee, S. C., twenty-five (25) cotton receipts, representing twenty-five bales of cotton as stored in the Planter's Warehouse, at Conway, S. C.; this cotton to Cooper-Smith Company of Conway, S. C., as collateral on his account.

Cooper-Smith Company,

By M. R. Smith."

On May 3, 1921, without advertisement and without the written consent of Bell, the plaintiff sold the cotton represented by the foregoing receipt to one J. C. Spivey at private sale for 7.58 cents per pound, and credited the account of R. L. Bell with the net proceeds of sale, $863.35, leaving a balance unpaid, as stated above, of $1,123.72.

The complaint was in the usual form for goods sold and delivered.  The answer alleged the pledge of the cotton, that it had been unlawfully sold and converted, and that this unlawful sale and conversion operated as a satisfaction of the debt sued upon.

At the close of the testimony the defendant moved for a directed verdict in his favor upon the ground that the cotton pledged as security had not been advertised and sold in accordance with law.  The motion was refused.  After the charge of the presiding Judge, the jury rendered a verdict in favor of the plaintiff for $1,294.02 (reduced on motion for new trial to $1,250.07), which represented the

balance due on account with interest. The defendant has appealed.

It appears that the circuit Judge held that the pledge of the warehouse receipts amounted to an oral pledge of the cotton in the warehouse, and that as an oral pledge the transaction did not come within the terms of Section 5628, Vol. 3, Code of 1922, requiring advertisement and sale at public outcry. His position is sought to be maintained by the plaintiff's counsel under the case of *Sellers v. Hancock,* 42 S. C., 40; 20 S. E., 13. The Section referred to is as follows:

"When any personal property under pledge, mortgage or hypothecation is to be sold for the purpose of satisfying the loan or debt secured by such pledge, mortgage or hypothecation, ·the pledgee, mortgagee or person holding the instrument showing the hypothecation shall advertise the time and place of said sale by posting a notice thereof, in writing, at least fifteen (15) days before such sale in three (3) public places in the county in which such personal property may be found, one of which shall be the courthouse door, or shall publish the same at least two weeks in a newspaper published in his County, unless the person making such pledge, mortgage or hypothecation, or his legal representative shall consent, or shall have consented, to a sale in some other mode or at some other notice, such consent to be expressed in writing."

We are not at all satisfied with the decision in *Sellers v. Hancock, supra.* The idea that the Section applies only to written pledges appears to have been based upon the words, "holding the instrument." Considering the object to be accomplished by the act, the duty of protecting a pledge, whether oral or in writing, and the rights of the pledgor, we are justified in imposing a strict construction upon the phrase quoted. Grammatically it refers only to hypothecation. We think therefore that an oral pledge of personal property is as much within the

protection of the act as a written hypothecation; that *Sellers v. Hancock* is wrongly decided and should be overruled, particularly as a contrary view manifestly controlled the Court's decisions in later cases of *Tolbert v. Fouche,* 118 S. C., 141; 110 S. E., 115, *Tolbert v. Fooshe,* 124 S. C., 166; 117 S. E., 354, *Tolbert v. Fouche,* 129 S. C., 338; 123 S. E., 859, and *Haselden v. Hamer,* 97 S. C., 178; 81 S. E., 424.

But even if *Sellers v. Hancock* be allowed to stand as authority, the warehouse receipts, coupled with the receipt which the plaintiff gave to the defendant, constituted a written pledge of the cotton as collateral security.

The most serious question is the effect of the private sale by the plaintiff of the cotton without complying with the mandatory directions of Section 5628. It unquestionably constituted a conversion of the property, unless the conduct of the defendant amounted to a waiver of his rights under the statute. This question of fact must be submitted to a jury.

The effect of the conversion, in the absence of waiver or estoppel on the part of the defendant, is the accountability of the plaintiff for the value of the cotton either as of the market price at the time of the conversion, or as of any price above that up to the highest price reached by the cotton market between the date of the sale and the date of the trial of the case. The jury would not, of course, give a less sum than the value of the property at the time it was converted, and could not give a verdict for a sum greater than the highest value reached up to the time of the trial, but within this limitation the finding is within the discretion of the jury, controlled by the justice of the case, and subject to correction by the trial Judge for caprice or injustice. *Carter v. Du Pre,* 18 S. C., 179 *Gregg v. Bank of Columbia,* 72 S. C., 458; 52 S. E., 195; 110 Am. St. Rep., 633. *Davis v. Reynolds,* 91 S. C., 439; 74 S. E., 827.

A brief, interesting discussion of the measure of damages is found in the last-named case at page 442 (74 S. E., 828), from which it appears that the jury would not be justified in allowing the highest price, where the conversion was "made under a *bona fide* claim of right, without grievous wrong or oppression, and it appeared reasonably certain the plaintiff would have sold about the time of the conversion."

The defendant contends that, assimilated to the rule in cases where the mortgagee of chattels has taken possession and sold them in violation of Section 5628 (*Fowler v. Goldsmith*, 131 S. C., 119; 126 S. E., 431, and cases cited therein, the conversion of the cotton amounted to a satisfaction of the debt. We are not disposed to apply this rule to the case of property which has a known market value, as cotton has, where no outside consideration, such as sentiment, affection, peculiar fitness, convenience, or other like matters could possibly enter. The matter to be arrived at is the damage which the party may have sustained by the conversion. If the defendant should be allowed a just price for the cotton, fixed by the jury under the rule above laid down, he cannot complain. It would not be just to impose upon the plaintiff a loss of the entire debt, when the defendant has had the benefit of the plaintiff's goods and can be readily compensated for the damage.

In the cases involving chattels mortgaged, it may well be assumed that if the mortgagor be given the statutory notice of the sale, he may embrace the opportunity of redeeming the chattels, and may be influenced to do so by some particular sentiment. No reason appears why the entire debt should be satisfied as a penalty for the conversion of property which has an ascertainable market value.

The judgment of this Court is that the judgments in the several cases above stated be reversed, and that they be remanded to the Circuit Court for new trials.

Messrs. Justices Watts, and Marion and Messrs. Acting Associate Justices Purdy and Ramage concur.

Mr. Chief Justice Gary did not participate.