## 12467

### JORDAN v. HUDGENS

#### (143 S. E., 811)

1. EVIDENCE—TESTIMONY AS TO TRANSACTION OF WITNESS WITH DEFENDANT BEING SUED FOR CONVERSION HELD INADMISSIBLE.—In action for conversion of cotton stored in defendant's warehouse, testimony as to transaction of witness, who was not a party to the suit, with the defendant, *held* inadmissible.

2. APPEAL AND ERROR—CHARGE WILL NOT BE HELD ERRONEOUS, WHERE COUNSEL FAILED TO CORRECT COURT, ALTHOUGH REQUESTED TO SO DO. —In action for conversion of cotton stored with defendant warehouseman, in which the Court, after stating the issues to the jury, requested counsel to call his attention to any error, and counsel for defendant stated that there was nothing further, charge will not be held erroneous on appeal.

3. WAREHOUSEMEN—INSTRUCTION PERMITTING JURY TO ASSESS AS DAMAGES HIGHEST VALUE OF PROPERTY CONVERTED UP TO TIME OF TRIAL WITH INTEREST HELD NOT ERRONEOUS.—In action for conversion of cotton against defendant warehouseman, instruction that the "measure of damages in a case of this character is the value of the property converted with interest thereon, and the jury may, not must, the jury may give the highest value of the property converted up to the time of the trial," *held* proper.

4. WAREHOUSEMEN—INSTRUCTION AS TO DEFENDANT WAREHOUSEMAN'S RIGHT TO DISPOSE OF COTTON IF PLEDGED, REQUIRING COMPLIANCE WITH FORMALITIES OF LAW, HELD PROPER (CIV. CODE 1922, § 5628). —In action for conversion of cotton against defendant warehouseman, instruction in accordance with Civ. Code 1922, § 5628, that defendant had no right to dispose of the cotton, as it had been pledged to him, without certain formalities, *held* proper.

Before FEATHERSTONE, J., Anderson, June, 1927. Affirmed.

Action by I. P. Jordan against W. K. Hudgens. Judgment for plaintiff, and defendant appeals.

The Judge's charge is as follows:

Mr. Foreman and gentlemen of the jury: What is the truth in this case, the truth, under the law and under the evidence? That is the sole purpose of the trial of any case in a Court of justice, the rendition of a verdict, a judgment which is right, under the law and under the evidence. And,

when you find what the truth is under the law and under the evidence, you write a verdict which speaks the truth, regardless of who it may hurt or who it may help.   You and I are not concerned in this case as to which side shall win the case, but we are concerned, and the only thing we are concerned in is, in seeing to it that a judgment is rendered here which is right between man and man, under the law and under the evidence.

Now you and I have listened to the testimony in this case, and we have listened to the able argument of able counsel, each of whom has presented to you the case from his standpoint, and now you and I have a duty to perform.   Your duty is to find what the facts in this case are, to get the truth from the facts, to take the law as I shall give it to you, and apply your findings of fact to the law, and the result is your verdict.   As I told you before you went to dinner, this case is not being tried by one Judge, but by thirteen judges; for every man on that panel is a judge in this case, and has a responsibility which is just as high and just as great as that of the presiding Judge.

Now I am going to undertake in as brief a way as I can to state the issues in this case as made by the pleadings, and, if I make any erroneous statement, I trust that counsel will interrupt me and have me to correct any errors which I make.

Now this is an action, Mr. Foreman and gentlemen of the jury, brought by I. P. Jordan against W. K. Hudgens, and the complaint contains two causes of action, as the lawyers call them.   In the first cause of action the plaintiff alleges that, at the time stated in the complaint, he turned over to the defendant, Hudgens, 20 bales of cotton, averaging 500 pounds in weight, and that that cotton was turned over to Hudgens as a pledge to secure what he owed Hudgens; and he alleges further that Hudgens sold that cotton, converted it to his own use, disposed of it without his knowledge or consent, and he claims that Hudgens is responsible to him

for a wrongful, illegal, fraudulent, and willful and wanton conversion of that property.

He sets out in the first cause of action in his complaint that the amount that he was due for fertilizers was $900, and then he allows a credit in the bank of $157, which would give him a total credit of $1,057, and he alleges that the cotton was worth, or ought to have brought him, $3,200, and that he has sustained actual damage in the amount of $2,143, and he seeks a judgment against Hudgens for the $2,143, and, in addition, $2,500 as punitive damages, which I will explain to you later on.

Now, in this second cause of action he alleges that he was induced by Hudgens to transfer from a warehouse at Williamston, where he had the cotton, 25 bales of cotton to the warehouse at Pelzer; that the 25 bales of cotton were turned over to Hudgens, and that Hudgens wrongfully and illegally sold and converted that cotton; and he claims judgment against Hudgens as to his second cause of action for the value of the cotton, which he says was $4,000, and punitive damages as to the second cause of action of $2,500, less a credit of $1,458.48.

And in both causes of action he claims that he is entitled to a judgment against Hudgens for $11,143, less this credit here of $1,458.48.

Now that's what the allegations of his complaint say.

Now the defendant, Hudgens, comes into Court, and he denies the material allegations of the complaint, and he sets up by way of affirmative defense that he had a full and complete settlement with the plaintiff; and he contends, through counsel, that the 25 bales of cotton were sold with the consent of the plaintiff, and he says that in that settlement the proceeds of the cotton were applied to certain indebtedness, and that Jordan has been settled with in full.

Now those allegations, briefly stated—because I do not care to burden you with too long a statement, nor by reading

the allegations of the complaint here—those, briefly stated, make up the issues here which you are to try.

Now, then, Mr. Foreman and gentlemen, the plaintiff having come into Court and alleged these matters, I charge you as a matter of law that he must prove what he has alleged, the material allegations of his complaint, by the greater weight and preponderance of the evidence; and, unless he does that, he is not entitled to recover. Now, when I say greater weight or preponderance of the evidence, I don't mean necessarily by the greater number of witnesses; that's not the way preponderance of evidence is determined. But it's determined by the weight which you give to the testi-mony of the witness or witnesses. And you are the sole judge of the credibility of the witnesses and of the accuracy of the witnesses in any case. It's for you to say what weight you will give to the testimony of any witness or witnesses. And if you should find that the plaintiff has made good the material allegations of his complaint by the greater weight or preponderance of the evidence, then the plaintiff would be entitled to recover, unless (and I will explain that to you later) the defendant has made good his affirmative defense of settlement. If the testimony as to the material allegations of plaintiff's complaint is evenly balanced, the plaintiff can't recover; it must preponderate, it must be heavier. Now, then, so much for that.

Now, when it comes to this question of settlement here as set up by the defendant in his answer, then the burden is on him to make good that, and he must prove that by the greater weight or preponderance of the evidence.

Now, then, Mr. Foreman and gentlemen of the jury, this complaint here is founded upon what is known in law as a wrongful conversion.

Now, what is conversion? It's the wrongful taking of the property of another and converting it to your own use. The taking, the possession, may be legal and lawful, but, if a man gets possession of property of another in a perfectly

legal way and then doesn't carry out that contract under which he got it, doesn't use it for the purposes for which it was turned over to him, but uses it for some other purpose, or sells it when he has no right to sell it, or sells it in a way that he has no right to sell it, then that would be a conversion of the property of another. And the measure of damages in a case of this character is the value of the property converted, with interest thereon, and the jury may—not must—the jury may give the highest value of the property converted up to the time of the trial.

Now, in this case I charge you that, plaintiff having alleged the highest market value as 32 cents, in any event, if he recovers, he can't recover more than 32 cents a pound for the cotton.

Now, then, I am speaking now, Mr. Foreman and gentlemen, about actual damages, actual damages.

There are two kinds of damages known to the law. The first is actual damages, sometimes called compensatory damages. And actual damages are intended to compensate and make whole in dollars and cents, put the party back where he was before the injury. That's actual damages.

Now, then, punitive damages move along an entirely different line, and I am going to try to make that as plain to you as I possibly can. Punitive damages are awarded for the purpose of punishing the wrongdoer and making an example of the wrongdoer, so as to make him behave himself in the future and for the good that it may have on other folks. Sometimes called spank money, sometimes called vindictive damages, sometimes called exemplary damages. And punitive damages are awarded where a person willfully and wantonly, consciously invades the rights of another, and not simply where he does it negligently or carelessly, but where a person consciously invades the rights of another, intentionally does it. He may actually have no actual malice or ill will towards that person, but, if he does wrong, knowing that he does wrong, and invades the rights of another in

that way, then the law says under such circumstances a jury shall award punitive damages so as to punish him for the wrong that he did, to deter him from doing wrong in the future, and to deter others from doing wrong.

Let me illustrate that, Mr. Foreman and gentlemen:

Probably you are all fathers, you have got chlidren in your homes. You probably wouldn't punish your child simply for being negligent and careless in the home, even though the rules of the home may have been violated. But, if you have got a child who knowingly, intentionally, knows what is right, and knows that he is doing wrong, and violates the rules of the home, you spank him. Why? To punish the child, to make the child behave in the future, and for the sake of the example it will have on the other children in the home.

And, if a man consciously invades the rights of another, does it willfully and wantonly, the law says he must respond not only in actual damages, but in punitive damages as well.

Now, so much for that.

Now, then, I am going to take up first what I have to tell you with reference to the first cause of action, which sets out and claims the conversion of the 20 bales of cotton.

The plaintiff in his complaint, as I have already told you, alleges that this 20 bales of cotton was turned over to Hudgens as a pledge for what Jordan owed Hudgens. And if that is true, Mr. Foreman, and gentlemen of the jury, if the plaintiff has satisfied you of that by the greater weight of the evidence, then I charge you, as a matter of law, that Hudgens had no right to dispose of that cotton and sell it without the consent of, or without notice to, the plaintiff; and, if he did so sell it under that kind of a pledge, if the cotton was there under that kind of a pledge, and he did so sell it, why he would be liable to account to Jordan for the true value of the property, and the jury, as the Court says, may add interest to that, or may give the highest market

value up to the time of the trial, in this case not exceeding 32 cents a pound.

Now, then, the defendant contends through counsel that the cotton was not turned over to him under a pledge as claimed by the plaintiff, but was turned over under a written contract. And, if you are satisfied from the evidence that such a contract was made, was executed by the parties, by Hudgens, and by Jordan, and that this paper here contains the terms, the true terms of the contract as executed, then both parties were bound by the terms of this contract, and we will have to consider that in order to arrive at the rights of the parties.

Now, if you are not satisfied that the contract was executed, and that this contains the true terms, then you disregard entirely what I have to tell you about this written contract.

Now, then, I am going to undertake to construe this contract. And I say to you, before I begin my construction of the contract, that there are certain technical terms or words used in this contract, and that certain witnesses have testified as to the meaning of those terms, and you and I will consider that testimony in endeavoring to construe this contract. You have heard that testimony, and you will also consider it.

Now, let's see. This purports to be a copy of the contract which defendant claims was entered into between him and Jordan, and it says, "Purchaser agrees to buy from seller—" The purchaser, if this be a true copy of the contract, would be Hudgens, and the seller would be Jordan. And Hudgens' contention through counsel is that in that blank there, or where the figure 2 is there now, that 20 should be inserted instead of 2, so as to make the contract cover 20 bales of cotton on a basis of July or October contracts. That is, the price in New York on July or October contracts was to be the basis for strict middling cotton. Strict middling there was taken as the basis of the price. "Delivered at Pelzer, South Carolina—" Well, there are some words

written in here which will have no bearing in so far as this contract here was concerned, because the defendant Hudgens contends that this cotton was actually delivered, and you will have to fix the date of that from the testimony.

Now, the purchaser, who was Hudgens, agreed to accept moderate amount of cotton grading below strict middling at the regular differential. Now that's a pretty big word, Mr. Foreman and gentlemen, but it simply means this: That the seller not only had the right to deliver strict middling cotton under the terms of the contract, but a moderate amount of grades lower than strict middling, and that the price of the grades lower than strict middling, and to be based on the price of strict middling or the difference in the price between strict middling and the lower grades as fixed by the New York Exchange.

"Purchaser agrees to resell this cotton to a legitimate cotton buyer—" Mr. Hudgens agreed to sell the cotton if they executed this contract to a legitimate cotton buyer in good financial standing, who would advance on the same—it's here 12 cents; I believe defendant contends 10 was the amount advanced—on the basis of strict middling. That would mean 10 cents on the basis of strict middling, and, if it was lower grades than that, it would be less, to be determined by what those grades were worth, based on the price of strict middling. "If the cotton does not grade strict middling, the amount advanced will be 10 cents less the number of points differential for the lower or grade off. Purchaser will arrange for hedge to carry against this cotton in lots of 100 bales in New York on the month specified above."

"The seller agrees should the future market decline below 12"—here they claim 10—"for month the hedge is carried that he will furnish a margin to the extent of $5.00 per bale for each bale for each 1 cent a pound decline below the price of 10 cents."

In other words, if cotton went down a cent a pound, then he agreed to furnish a margin to keep it up to what it was at the beginning.

"It is understood by the seller that he has the right to fix the price on this cotton during the open market in New York at any time between now and the first tender day for the month on which the contract is hedged."

And then the last clause—"The seller does hereby give, authorize and elect the buyer, W. K. Hudgens, as his attorney, with full power to fix the price on this cotton at any time necessary or as agreed upon under the above contract and the option brought against it."

Now, in reference to that last clause and the clause preceeding it, I charge you this, because it's my duty to construe the contract: If you believe that the parties executed the contract, and that this paper here contains the true contents of that contract, then, that Hudgens had the right to fix the price at which the cotton was to be sold, provided he acted according to the terms of this contract and acted in good faith.

If you constitute a man your agent, Mr. Foreman, to carry out your contract, he must act according to that contract in order for you to be bound by it. And your agent, which you constitute to do a certain thing, must act in good faith toward you; and, if he acts in bad faith, why you are not bound by his acts.

To repeat a little bit. If you should find that there was a written contract, executed by the parties covering the 20 bales of cotton, then the contract binds the parties, and must control. And I charge you that, under the terms of the contract, Jordan made Hudgens his agent to fix the price of the cotton, provided he acted fairly and in good faith, and acted according to the terms of the contract.

Construing the contract, I tell you that under its terms the cotton had already been disposed of, the cotton had already been sold, and all that there was left to do to consummate it

was to fix the price. It had been already sold, in part; all that was left being to fix the price according to its terms. But in this connection I charge you that, if you constitute one your agent to complete a contract, he must act in good faith, having in view your interests, and he has no right to act in bad faith or against your interests. If he does act in bad faith, against the interests of his principal, then he violates the terms of his agency, and, if such conduct results in injury to his principal, he is liable therefor. If he acts in good faith and in accordance with the terms of the contract, then the principal is bound by his acts.

Now, then, Mr. Foreman and gentlemen, getting down to the second cause of action, the defendant contends through his counsel, referring to this 25 bales of cotton, that it was turned over to him, and that the plaintiff, Jordan, authorized him to sell the cotton; that, when he sold the cotton, he was to have the right to apply it to the indebtedness; and then he says further that after that, after the sale was made, Jordan ratified his conduct in selling it by accepting the settlement.

Well, now, then, Mr. Foreman and gentlemen, I charge you that, if the testimony satisfies you, as to the 25 bales of cotton, that Jordan consented to its sale, as contended by defendant's counsel, authorized him to sell it and apply the proceeds to his indebtedness, the sale was absolutely valid and legal, and Hudgens had a right to sell the cotton and make the application. And I charge you further that, even though Jordan may not have consented, yet, if after he had a full knowledge of all the facts of what Hudgens had done, if he knew about it, if he received the balance, by credits or otherwise, of the proceeds of the sale, then he would in law have ratified the sale and be bound by it. But, before a man can ratify something, Mr. Foreman and gentlemen, he must have had full knowledge of what had been done, he must know what had been done before any conduct of his

afterwards can ratify what has been done wrongfully previous to that time.

Now then, Mr. Foreman and gentlemen, it seems to be conceded here by counsel for the plaintiff, as I understand it, that Hudgens must be credited with such amounts as Jordan justly owed him, in accounting for the proceeds of the sale. In fact, in the complaint those items are credited—in the claim. And, if you should find from the evidence in the case that the action on the part of Hudgens was not wrongful, that there was nothing done by him which amounted to a wrongful conversion of the property, and that he has accounted fully for the proceeds of the sale of the cotton, and there is nothing left, why there could be no recovery on the part of the plaintiff at all, there could be no recovery, that is, if the action of Hudgens was not illegal or wrongful, but if he acted all the way through legally, in accordance with what I have already told you.

Now, gentlemen, as I see it, that practically covers the law of the case. I would be very glad, indeed, to have any suggestions from you gentlemen as to anything further that you want me to charge.

Mr. Cothran: I would ask your Honor to instruct the jury, which you may have done—you have instructed them in regard to the contract. But I would ask your Honor to tell them that, in the event they find that no contract was entered into, then what you have said in construing the contract is not to be considered.

The Court: Why, of course. I meant to tell them that, and I thought they understood that. You and I need not bother with this contract here at all, Mr. Foreman, unless you find that the contract was actually executed by the parties and that that represents the true contents of the contract executed by the parties. Anything on the part of the defense?

Mr. Watkins: No, sir; I think not, sir.

Now, then, Mr. Foreman and gentlemen, to come right back to where we started, what is the truth in this case? These parties are entitled to an absolute fair trial. The law assumes that there are twelve honest minds on that jury, and that each mind is honestly and earnestly going out in search of the truth. And I may say in passing that, if that be true, those honest minds generally find .the truth.

If you find for the plaintiff in this case, you will write your verdict on the back of this paper here marked Summons for Relief, where I make the cross-mark—it don't matter for whom you find, your verdict will be written on the back of this paper. If you find for the plaintiff, the form of the verdict will be, we find for the plaintiff so many dollars, or so many dollars and cents, writing it out in words and not in figures, and sign your name as foreman. If you find for the defendant, the form of your verdict will be, we find for the defendant, and sign your name as foreman.

*Messrs. Thomas Allen,* and *Watkins & Prince,* for appellant, cite: *Measure of damages resulting from unlawful conversion:* 116 S. E., 43; 92 S. E., 398. *Error to charge as to right of pledgee under a parol pledge to sell at a private sale:* 42 S. C., 40.

*Messrs. Dean, Cothran & Wyche,* for respondent, cite: *Party cannot take his chances of a successful issue, reserving vices in the trial, of which he has notice, for use in case of disappointment in the result:* 136 S. C., 510; 83 S. C., 82. *Measure of damages:* 89 S. C., 538. *Right to punitive damages:* 69 S. C., 110; 75 S. C., 299. *Duty to notify pledgor of sale of cotton received as pledge:* Sec. 5628, Code. *Cases distinguished:* 42 S. C., 40. .

June 13, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by I. P. Jordan, plaintiff, against the defendant, W. K. Hudgens, commenced in the Court of Common

Pleas of Anderson County, by service of summons and complaint, January, 1926, was for the recovery of damages for an alleged unlawful conversion of two lots of cotton owned by the plaintiff.    The complaint consisted of two causes of action.    Under the first cause of action, the plaintiff alleged the conversion of 20 bales of cotton, on account of which he asked judgment against the defendant for $2,143, as actual damages, and $2,500, as punitive damages, and, under the second cause of action, the plaintiff alleged the conversion of 25 bales of cotton, for which alleged act he sought $2,541.52, as actual damages, and $2,500, as punitive damages.    The plaintiff alleged that the 20 bales of cotton referred to under the first cause of action were delivered to the defendant, as a pledge or security to a fertilizer debt owing by the plaintiff to the defendant, in compliance with a request of the defendant, and that the 25 bales of cotton referred to under the second cause of action were delivered to the defendant for the purpose of being stored in defendant's warehouse, which was done on the solicitation of the defendant.    It is further contended by the plaintiff, as set forth in his complaint, that, notwithstanding he had not given any authority to the defendant to dispose of the said cotton, the defendant sold the said cotton, or permitted the same to be sold, "without any notice whatsoever to the plaintiff, either actual or constructive," of said sale.    In addition, plaintiff's complaint contained other allegations on the charge of unlawful conversion of plaintiff's property, and alleged that defendant's acts were fraudulent, willful, and wanton.

The defendant's answer was a general denial of all of the material allegations of the complaint under both causes of action, with this affirmative defense to the first cause of action:

"(3) Defendant alleges that in the spring of 1921, at the special instance and request of the plaintiff, he sold for plaintiff 20 bales of cotton in open market for the best price

obtainable, and that he faithfully and fully accounted to the plaintiff for the proceeds of said sale."

The case was first tried by his Honor, Judge Grimball, and a jury, resulting in a mistrial. The second trial was by his Honor, Judge Featherstone, and a jury, March, 1927, and resulted in a verdict for the plaintiff in the sum of $1,190.20. The·defendant's motion for a new trial having been ·refused, from entry of judgment on the verdict, the defendant has appealed to this Court, pursuant to notice duly served, imputing error to his Honor, Judge Featherstone, in the· particulars set forth under the exceptions.

Appellant has nine exceptions, but, at the hearing before this Court, Exceptions 4, 5, 7, 8, and 9 were abandoned, and, in our consideration of the appeal, we shall therefore only refer to the remaining exceptions, 1, 2, 3, and 6.

### FIRST EXCEPTION

"That his Honor, the presiding Judge, erred in refusing to permit the witness Guyton to testify on redirect examination with regard to· certain transactions that he and others had with the defendant similar to and at the same time of that which plaintiff complains of; the error being that said testimony was relevant to explain in the testimony of said witness given at the· instance of plaintiff on cross-examination, and the exclusion thereof was prejudicial to the defendant."

This exception is rather indefinite, in that it does not specifically state just what error is intended to be charged. But, waiving that objection, according to our view, the exception cannot be sustained. An examination of the transcript discloses that the exception is based upon the presiding Judge's refusal to permit defendant's witness, Guyton, to answer the question, "Who signed the draft for your cotton?" Any transaction that the witness Guyton had with the defendant as to Guyton's cotton was foreign to the issue before the Court. Guyton was not a party to the suit,

and had no interest in it. We think the presiding Judge properly overruled this line of testimony.

## SECOND EXCEPTION

"His Honor erred in charging the jury as follows: 'Now the defendant, Hudgens, * * * contends through counsel that the 25 bales of cotton were sold with the consent of the plaintiff, and he says that in that settlement the proceeds of the cotton were applied to certain indebtedness'; the error being, first, that said portion of said charge is a charge on the facts of the case, and is, therefore, a contravention of Article 5, § 26, of the Constitution of South Carolina, 1895; second, that said statement to the jury was not an accurate statement of any allegation of the answer not of any contention of the defendant. On the contrary, the defendant contended that he received no part of the proceeds of the settlement for said 25 bales of cotton, and had nothing to do therewith."

It will be observed that under this exception appellant imputes error to the presiding Judge in two particulars, in charging on the facts and misstating the issues. An examination of his Honor's charge to the jury shows clearly that this exception cannot be sustained. The presiding Judge was endeavoring to state the issues to the jury, and, in doing so, he specifically requested counsel to call to his attention any error he might make. At the conclusion of his charge, his Honor again spoke to counsel and asked if there was anything further. Counsel for appellant answered that there was nothing further. If counsel was not satisfied that the issues were stated correctly, attention should have been called to the matter, especially when his Honor had made specific request for this to be done. The exception is therefore overruled.

## THIRD EXCEPTION

"His Honor erred in instructing the jury with regard to the meaning of and liability ensuing from a conversion as follows: 'And the measure of damages

in a case of this character is the value of the property con-
verted with interest thereon, and the jury may—not must—
the jury may give the highest value of the property con-
verted up to the time of the trial'; the error being that his
Honor failed to instruct the jury that the value of the prop-
erty as mentioned was to be ascertained as of the time of the
conversion."

This charge by his Honor on the measure of damages is
in accord with the recognized law of this State.    See *Rogers
v. Randall,* 2 Speers, 38.    *Gregg v. Bank of Columbia,* 72
S. C., 458; 52 S. E., 195; 110 Am. St. Rep., 633, and *Sizer
& Co. v. Dopson,* 89 S. C., 538; 72 S. E., 464.

### SIXTH EXCEPTION

"His Honor erred in charging the jury as follows:
'The plaintiff in his complaint, as I have already told
you, alleges that this 20 bales of cotton was turned
over to Hudgens as a pledge for what Jordan owed Hud-
gens.    If that is true, Mr. Foreman and gentlemen of the
jury, if the plaintiff has satisfied you of that by the greater
weight of the evidence; then I charge you as a matter of law
that Hudgens had no right to dispose of that cotton and to
sell it without the consent of, or without notice to, the plain-
tiff'; the error being that his Honor therein assumes that by
the terms of the pledge consent to sale was to be procured
from pledgor or notice of sale was to be given pledgor,
whereas the terms of said alleged pledge were in contro-
versy."

This charge by his Honor is in accord with Section 5628,
Vol. 3 of the Code of 1922, and was in response to the al-
legations of the complaint, and to the proof in the case.

The exceptions are therefore overruled, and it is the judg-
ment of this Court that the judgment of the Circuit Court
be, and is hereby, affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTH-
RAN, BLEASE and STABLER concur.