### WILLIAMS v. MURRAY et al.
### No. 4373.

Circuit Court of Appeals, Fourth Circuit.

Oct. 18, 1938.

Joseph L. Nettles, of Columbia, S. C. (John P. Grace, of Charleston, S. C., Eugene S. Blease, of Newberry, S. C., Claud N. Sapp, of Columbia, S. C., and J. Douglas Poteat, of Durham, N. C., on the brief), for appellant.

William M. Shand and Christie Benet, both of Columbia, S. C. (Benet, Shand & McGowan, of Columbia, S. C., on the brief), for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and WAY, District Judge.

### PER CURIAM.

This suit was brought by T. C. Williams against William S. Murray and Henry Flood, Jr. for breach of a contract dated April 15, 1926, which related to the water power site on the Saluda River belonging to the Lexington Water Power Company. The contract provided that in consideration of the delivery by Williams to Murray of an option on the stock of the Power Company, and the contribution of $50,000 each by Murray and Flood for the purchase of the stock, Murray would divide equally, share and share alike, certain shares of stock to be thereafter delivered to Murray for the sale of the stock of the Power Company to a company to be formed to develop the site either by itself or in association with any other site on the river. It was further agreed that any engineering fees that might result from the development should be paid to the firm of Murray and Flood, engineers.

An option to purchase the stock of the Power Company for $100,000 had already been secured by Williams and delivered to Murray, and the stock was subsequently purchased. On May 6, 1926, an agreement was entered into between the Broad River Power Company, the owner of certain lands and a power site also on the Saluda River, and Murray for the declared purpose of carrying into effect a plan for the consolidation of the two water power sites so

as to form one hydroelectric development. In this contract it was agreed that prior to an offer to sell either of the said properties, the property of the Lexington Water Power Company would be offered to the other contracting party for $500,000, and the property of the Broad River Power Company would be offered to the other contracting party for $135,000. The Broad River Power Company was a subsidiary of the General Gas and Electric Company.

On March 3, 1927, an agreement was made between Murray and Flood and the General Gas and Electric Company providing for the transfer to it of all of the stock of the Lexington Water Power Company and the lands and rights of the Broad River Power Company, and for the transfer to Murray and Flood or their nominees of 36,000 shares of the stock of the Lexington Water Power Company of the value of $25 per share, that is, a total value of $900,000. It was also provided that the Lexington Water Power Company should pay to T. C. Williams $833.33 monthly, as compensation for services in the acquisition of lands and water rights along the Saluda River, and to Murray and Flood each $1833.33 monthly for time devoted to the engineering development of the project, for monies expended during the period of development and for procuring a contract for the sale of one-half of the output of the hydroelectric plant, the payments to continue until the declaration of the first dividend on the common stock of the Lexington Water Power Company. These payments, aggregating $54,000 per annum, represented 6% on the sum of $900,000.

On April 11, 1928, another agreement was entered into between the parties to this case wherein the agreement in suit of April 15, 1926, was described, and it was stated that Williams had been instrumental in securing the option on the stock of the Lexington Water Power Company, and that Murray had purchased the company under that option and had subsequently sold it to the General Gas and Electric Corporation at a valuation of $500,000 placed upon the water rights it possessed; that each of the parties to this case had received or would receive common stock in the new company at the value of $166,666.66; that the General Gas and Electric Corporation had retained Murray and Flood as engineers of the project and they had agreed to take as payment for engineering and other services part cash and part common stock; that while Williams had elected to take a cash income of $10,000 a year during the period of development, Murray and Flood had elected to take additional stock to cover their engineering concept of the project and other services to be rendered; and that consequently there had resulted the division of 36,000 shares of stock amongst the parties to the agreement as follows: Murray 15,311 shares; Flood, Jr., 15,311 shares and Williams 5,378 shares. The parties expressed their full satisfaction with respect to the matters set out and annulled all other agreements between them.

The circumstances recited, which were introduced in evidence in the trial in the District Court, tended to show that the water rights of the Lexington Water Power Company were valued in the consolidation with the rights of the Broad River Power Company at the sum of $500,000 and that the rights of the Broad River Power Company were valued at the sum of $135,000 and also that the additional sum of $400,000 received by Murray and Flood was paid to them for services in the conception of the plan of consolidation, and that the full amount of the stock received by them was disclosed to Williams in 1928, nearly seven years before the suit was filed.

The present action is based upon allegations that the real and true price for the transfer of the Lexington Water Power Company to the control of the General Gas and Electric Corporation was the sum of $900,000 and that Murray and Flood concealed the truth as to the transaction and falsely represented to Williams that the water rights of the Lexington Water Power Company brought only the sum of $500,000, and thereby induced Williams to accept one-third of that amount in stock, pretending that the additional amount of $400,000 was given to them for services performed. The alleged fraud is denied by the defendants and it is specifically pointed out that under the original agreement between the parties, any engineering fees resulting from the development were to be paid to Murray and Flood. The District Judge, upon consideration of all the evidence, took the position that the plaintiff's claim was entirely negatived by the documentary evidence in the case and therefore instructed the jury to find a verdict for the defendants.

There was, however, evidence in the case which tended to show that the consideration paid for the water rights of the Lexington Water Power Company was $900,000 and .not $500,000, and that in addition Murray and Flood received large sums for the engineering services rendered by them. This evidence included an itemized bill for $150,000 rendered August 18, 1927, by Murray and Flood to the Lexington Water Power Company for services performed from August 1, 1925 to August 1, 1927, in connection with the development, covering a preliminary study of the possibility of consolidating the two sites above described, conferences in presenting the plan and the possibilities of the proposed development, preparation of studies of the magnitude of the market available to the output, &c. There was also another bill of equal amount rendered by Management Association, an engineering corporation which shared the engineering work and the compensation therefor with Murray and Flood. The evidence also tended to show that Murray and Flood received one-half of the additional aggregate sum of $950,000 for engineering and financial services rendered to the enterprise and specified in accounts stated; that although Murray and Flood stated that the value of the conception of the united enterprise was worth the sum of $400,000, no separate bill for that item was rendered by them. Certain preliminary estimates of the cost of the development received in evidence indicated that $900,000 would be set aside for the water rights secured by Murray and Flood, and Murray subsequently testified before the Federal Power Commission at Washington that $900,000 in stock had in fact been given for these water rights. Murray testified in the pending case that the report of his testimony in Washington was incorrect and that it should have shown that the sum of $900,-000 included not only water rights but also engineering services.

We have touched upon important aspects of the evidence; but of course we express no opinion as to the merits of the controversy. It is our judgment, however, that there was such a conflict in the evidence that the issue raised by the pleadings should have been submitted to the jury.

The judgment of the District Court must therefore be reversed.