**MURRAY et al. v. WILLIAMS.**

No. 4651.

Circuit Court of Appeals, Fourth Circuit.

Sept. 6, 1940.

Christie Benet and C. T. Graydon, both of Columbia, S. C. (William M. Shand, of Columbia, S. C., on the brief), for appellants.

Joseph L. Nettles and Claud N. Sapp, both of Columbia, S. C. (John P. Grace, of Charleston, S. C., Eugene S. Blease, of Newberry, S. C., and J. Douglass Poteat, of Durham, N. C., on the brief), for appellee.

Before PARKER, SOPER, and NORTH-COTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This action was originally brought in the Court of Common Pleas for Richland County, South Carolina, on February 22, 1935, by the appellee, T. C. Williams, here referred to as the plaintiff, against appellants, William S. Murray and Henry Flood, Jr., individually and as co-partners under the firm name of Murray and Flood, here referred to as the defendants, and was removed to the District Court of the United States for the Eastern District of South Carolina. The object of the action was to recover for an alleged breach of contract between the plaintiff and the defendants, dated April 15, 1926, which involved the purchase of the capital stock of Lexington Water Power Company, a corporation.

The cause was first tried in March, 1938, when the trial judge directed a verdict for the defendants, on appeal to this court the judgment was reversed. Williams v. Murray, 99 F.2d 279.

The cause was again tried in November, 1939, before a jury. This trial resulted in a verdict for the plaintiff against the defendants in the sum of $133,333.33. Defendants moved for a new trial which motion was denied and judgment entered for the plaintiff from which action this appeal was brought.

A statement of the facts shown in the record in the former case will be found in the opinion of this court (Williams v. Murray et al., supra). With the exception of the addition of one letter, a deposition by witness W. S. Barstow, and the testimony of witness John A. Hancock, the record in this case is essentially identical with that passed upon in the first appeal.

The additional letter introduced in evidence in the second trial was a letter written by defendant Murray to one Guignard, dated October 15, 1925, which shows that at that time he, Murray, had already formulated his conception of the combination of the two heads. The deposition of Barstow was to the effect that the Barstow interests paid Murray $400,000, for Murray's conception of the project. The testimony of Hancock was to the effect that several years before Murray is alleged to have had his conception of the project he, Hancock, in fact prepared a redrawing of a map under the supervision of the chief engineer of the Barstow interests, which map shows the identical features and factors which Murray claimed were first visualized in his conception in 1925; and that this map was on file as a public record with the Federal Power Commission in Washington, D. C., before Murray claimed to have conceived the combination of the two heads.

We can find nothing in the record at the second trial that would cause us to change the conclusion reached in our former opinion, that there was such a conflict in the evidence that the issue raised by the pleadings should be submitted to the jury.

■ The facts of the case are set out in the former opinion of this court and it is not necessary to narrate them again. We have stated above the additional evidence taken in the second trial. In entering into the contract of April 15, 1926, in regard to the development in question, the parties to this contract entered into a joint adventure which called for the utmost good faith as between the parties. Dexter & Carpenter, Inc. v. Houston et al., 4 Cir., 20 F.2d 647.

The plaintiff contends that the defendants did not carry out this obligation of good faith but misrepresented to him the amount received for the Lexington Water Power Company stock, which was the subject of the contract of April 15, 1926. On the other hand, the defendants claim that they correctly reported to the plaintiff the amount received for the stock and gave the plaintiff his share, fixed under the contract, and that the $400,000, they did not divide with him, was given them for what they termed "concept engineering" in which the plaintiff had no interest.

The issue between the parties may be narrowed down to the sole question as to whether the $400,000 was paid the defendants for the stock of the Lexington Water Power Company or for engineering. There was evidence to the effect that the defendants had been paid in cash for all engineering services, at one time the sum of $150,000, and that there was a contract between the Barstow interests and the defendants whereby those parties were to divide on a fifty-fifty basis moneys received for engineering and other services pertaining to the development. There was proof of a contract between the Lexington Water Power Company and the Barstow interests providing for the payment of $250,000 for services in the matter of financing the development. There was also proof that their share of the amounts due under these contracts aggregating $625,000 had been paid in cash, to the defendants.

It was also shown that the defendants, for the purpose of establishing the cost of the development, had prepared and filed with the Federal Power Commission a statement showing that $900,000 had been paid to Murray and Flood for water rights; this statement being in contradiction of the report the defendants made to the plaintiff that only $500,000 had been paid for the stock of the water company. In a hearing before the Federal Power Commission, held for the purpose of ascertaining the cost of the development, defendant Murray swore that $900,000 had been paid for water rights.

Defendant Murray contended that the statement filed with the Commission and his testimony there were mistakes and that only $500,000 had actually been received for the water rights. The defendants contend that the $400,000 was actually paid them for the conception of the project and that the plaintiff was entitled to no part of it under the contract of April 15, 1926.

Defendants further set up a contract dated April 11, 1928, in which the plaintiff and defendants executed an agreement summarizing and settling their transaction in connection with the matter. Plaintiff contends that he executed this contract relying upon the statement made to him by the defendants that only $500,000 had been received for the water rights.

■ The voluminous correspondence between the parties was put into the record and there was a long drawn out trial, at the conclusion of which the case was submitted to the jury under a fair and impartial charge by the trial judge to which charge there was no exception. There are a number of points relied upon on behalf of the defendants as constituting error in the course of the trial below, none of which are of sufficient importance to justify discussion with the possible exception of the alleged exclusion from the evidence of the letter of September 21, 1927, from defendant Flood to the plaintiff, which the plaintiff testified he had never received and which Flood testified he had deposited in due course in his office for mailing. This letter if received by the plaintiff would have fully informed him as to the details of the $900,000 transaction. While it is our opinion, with regard to this letter, that it should have gone to the jury for what it was worth under the evidence, a study of the record does not show that it was ever really offered in evidence and that the judge did not rule directly excluding it and that the attorneys for the defendants did not insist upon its admission. In view of the plaintiff's testimony that he never received this letter its admission as having been written in Flood's office would probably have had no effect upon the verdict of the jury. Certainly no such situation is presented by the record as would justify a holding of harmful error with regard to this letter. Tending to cast doubt

on defendants claim that the $400,000 was paid for "concept engineering" is the evidence of Hancock that a map of the project showing the same concept was on file with the Federal Power Commission prior to the time that Murray claimed to have conceived the project.

It is contended on behalf of the defendants that there was error in refusing testimony as to the value of the stock in question. There was evidence at the trial from which the jury would be justified in finding that the notes or stock representing the $400,000 were worth par at the time of their delivery to the defendants. In South Carolina great latitude is allowed the jury in fixing the measure of damages for the conversion of personal property. Jordan v. Hudgens, 146 S.C. 209, 143 S.E. 811; Cooper-Smith Co. v. Bell, 137 S.C. 1, 134 S.E. 658; Birt v. Greene & Co. et al., 127 S.C. 70, 120 S.E. 747; Young v. Corbitt Motor Truck Co., 148 S.C. 511, 146 S.E. 534. Here there was a waiver by the plaintiff of any interest.

The record presents a picture of high finance that is startling in its detail but there was enough evidence on behalf of the plaintiff, if believed by the jury, to sustain the verdict in his favor. We do not see how it could be concluded by the jury, under the conflicting evidence, that the defendants had acted with that utmost good faith which they owed to their joint adventurer, the plaintiff.

There was such a conflict in the evidence that demanded the submitting of the cause to the jury and there was ample evidence to sustain the verdict. The judgment of the court below is affirmed.

Affirmed.