## GIBSON v. HUTCHINS.

1. MARRIED WOMAN—MORTGAGE.—A mortgage made by a married woman for the benefit of her separate property, while the act of 1887 was of force, is a valid instrument, even in the absence of a declaration of an intention to bind such property.

2. IBID.—IBID.—FINDINGS OF FACT.—The findings by the Circuit Judge, that

a loan negotiated by a married man in his wife's name was not for the benefit of her separate estate, and that he was not her agent, not being excepted to, these findings are conclusive.

3. MARRIED WOMAN—MORTGAGE—ASSIGNEE.—A transferee of a past due note and mortgage given by a married woman, but not binding upon her separate estate in favor of the mortgagee, is also not binding in favor of the purchaser by virtue of the transfer, it being subject in his hands to all the equities existing between the original parties.

4. IBID.—IBID.—DEED.—A judgment by default in foreclosure proceedings being about to be taken against a married woman on an invalid mortgage, she made a deed, absolute on its face, but in intent a mortgage, to the mortgaged land. With this deed the grantee obtained from a bank in 1892 money sufficient to pay off the woman's mortgages and some antecedent indebtedness of his own to the bank, securing it all by his mortgage, the bank believing the deed to be absolute. *Held*, that the bank could enforce its mortgage to the extent that its money was used in paying the prior mortgage, but not for the antecedent indebtedness of its mortgagee.

5. IBID.—IBID.—IBID.—ASSIGNMENT.—Nor could an assignee, to whom this apparent grantee, but real mortgagee, had conveyed this land in a deed of assignment for the benefit of his creditors, claim any interest in the land.

Before GARY, J., Oconee, February, 1894.

Action by Thomas L. Gibson *et al.* against Fannie S. Hutchins *et al.* The facts are thus stated in the Circuit decree:

. The facts of this case are as follows: On the 13th day of November, 1890, the defendant, Fannie S. Hutchins, then and now a married woman, executed a promissory note for the sum of one thousand dollars, which was endorsed by the plaintiffs, T. L. Gibson, J. A. F. Hutchins, and Asa Leathers. At the same time the said Fannie S. Hutchins, to secure the payment of said note, executed a mortgage in favor of said Asa Leathers, T. L. Gibson, and J. A. F. Hutchins, of a tract of land situate in Oconee County, and containing one hundred acres, more or less. The note and mortgage were then delivered to the husband of defendant, J. A. F. Hutchins. Shortly thereafter the said J. A. F. Hutchins negotiated with J. D. Verner, a banker in the town of Walhalla, to discount, and did in fact discount, said note with J. D. Verner for a valuable consideration, and thereupon transferred the same to said J. D. Verner. When

the note fell due it was not paid, but was renewed by the execution of another note on the 6th day of February, 1892—the renewal note was, likewise, endorsed by the said T. L. Gibson, J. A. F. Hutchins, and Asa Leathers.

On the 6th day of December, 1890, the said Fannie S. Hutchins executed a second mortgage on a certain tract of land in the town of Westminster, in Oconee County, to the said plaintiff, T. L. Gibson, conditioned for the payment of the full and just sum of twelve hundred dollars, and reciting that a bond had been given of even date. The bond recited in the mortgage is not among the papers submitted to me, but there appears attached to the mortgage two notes, each bearing date on the 28th day of November, 1891—the one for the sum of six hundred dollars, payable to the order of T. L. Gibson, eight months after date; and signed by the defendant, F. S. Hutchins; the other is for the like sum of six hundred dollars, payable to the order of J. D. Verner, and signed by T. L. Gibson. It appears, from the evidence in the cause, that the said T. L. Gibson had arranged to discount the note of the defendant, Fannie S. Hutchins, with J. D. Verner, but when the appointed time came, the Hutchins note was absent, whereupon Gibson executed his note to Verner, and afterwards deposited the Hutchins note as collateral. Gibson says, in his testimony: "I also endorsed a note for Mrs. Hutchins for six hundred dollars. We went to Anderson to get the money, but failed, and we got the money from Verner, but did not have the note, and I gave my note, and the mortgage was placed as collateral. Mr. Hutchins got the money. I don't know what he did with it." On the 29th day of January, 1892, J. D. Verner and C. J. Strong entered suit against the defendant, Fannie S. Hutchins, to foreclose the two mortgages above alluded to. It appears that a summons and complaint were served on the defendant, Hutchins, to which, from some cause, she made no defence, and judgment of foreclosure was about to be entered against her by default, when the plaintiff, T. L. Gibson, made an arrangement with Verner, and as a result the suit was discontinued. The notes and mortgages were then assigned by Verner to J. W. Stribling; upon one of the notes the following appears:

"I hereby assign the within to J. W. Stribling, cashier, without recourse on me in law or equity. (Signed) J. D. Verner." On the      day of February, 1892, the said Fannie S. Hutchins executed and delivered to T. L. Gibson, in form, an absolute deed of conveyance of the tracts embraced in the two mortgages above alluded to. Although the deed appears on its face to be absolute, it was understood and agreed at the time it was executed, that the grantor and defendant, Hutchins, was to have the land reconveyed to her, upon repaying to Gibson the amount he paid out in taking up the two mortgages, called for convenience the "Verner mortgages." The plaintiff, Gibson, then undertook to negotiate a loan with which to take up the Verner mortgages, and on the 15th day of April, 1893, he executed a mortgage to J. W. Stribling, as cashier of the Seneca Bank, to secure the payment of the sum of five thousand two hundred and twenty-three dollars and sixty-seven cents ($5,223.67). This mortgage included the tracts deeded by Mrs. Hutchins to Gibson, and also other land belonging to Gibson. It should be stated that at this time Gibson was also indebted to the Bank of Seneca. On the 5th day of October, 1893, said Gibson made a deed of assignment, for the benefit of his creditors, to Jesse W. Stribling. The complaint, after alleging in substance as herein stated, seeks to have the deed executed by the defendant, Hutchins, to Gibson declared to be a mortgage, and the same foreclosed and the proceeds applied to the claims of the different parties to this action. The complaint is not in a form to be commended. There is evidently a misjoinder of causes of action. It is, therefore, difficult to pass upon the different equities of the parties in such a proceeding. Counsel, however, of the respective parties expressed a desire at the hearing to have the whole matter adjudicated in this proceeding, so there is no issue before me on the pleadings.

Among the defences set up by the defendant, Mrs. Hutchins, is a charge that she was defrauded and overreached in the execution of the Verner mortgages. And that the said mortgages and notes were executed and accepted as accommodation papers for the benefit of her husband, J. A. F. Hutchins, and the plaintiff, Thomas L. Gibson, and were not made with ref-

erence to her separate estate, and are, therefore, not binding on her. The cause was referred to the master of Oconee County to take the testimony, decide all issues of law and fact, with leave to report any special matter. The master has made his report, in which he decides all the issues adverse to the defendant, and recommends a foreclosure of the mortgage as prayed for by plaintiffs. The cause was heard by me upon exceptions to the master's report. The master finds that "All the transactions with the two banks, so far as the defendant, Mrs. Hutchins, is concerned, with them, were negotiated for her by her husband, who was acting as her agent in the transactions, she having nothing to do with them except to sign her name to the papers." I cannot agree with the finding of the master, that "the negotiations were made for the benefit of the defendant, nor that they were made by her husband while acting as her agent." This conclusion, in so far as being supported by the evidence, seems to me to be just the reverse. Mr. J. D. Verner, who discounted the note, testifies that "J. A. F. Hutchins brought the $1,000 note to me, endorsed by T. L. Gibson, Asa Leathers, and J. A. F. Hutchins, and signed by F. S. Hutchins; I discounted the papers and turned over the money to J. A. F. Hutchins; I don't think I would have discounted the note without the endorsement of Gibson, Leathers, and Hutchins. I had no transactions with Fannie S. Hutchins about this paper. I suppose I knew she was the wife of J. A. F. Hutchins at the time I discounted the note. I have, at any rate, found it out since. I discounted a note for $600 of Thomas L. Gibson; the F. S. Hutchins note might have been left with me as a collateral, but I can't say for certain. * * * Mr. Gibson was the only one I knew in the transaction. I don't remember to have ever spoken to Fannie S. Hutchins about the mortgage. I discounted the paper, looking to Mr. Gibson and the collateral for payment." It appears to me that this testimony offered by the plaintiff conclusively negatives the idea that the husband of the defendant, while acting as her agent, negotiated this loan for her, and that it was for her benefit. It is true, that Mr. Gibson testifies that J. A. F. Hutchins "claimed to be acting as agent for his wife." This is not suf-

ficient to prove agency. It would be a dangerous precedent to allow agency to be proven by the declarations of the agent. Outside of this declaration there is absolutely no evidence tending to prove the agency. The most that can be assumed, is that the husband had a note and mortgage executed by his wife, and after having the note endorsed by two approved sureties, he discounted the note at the bank for a valuable consideration.

For the above reason I cannot agree with the finding of the master; the same is, therefore, overruled. There appears to me, however, a more serious question than this in the case. It appears from the evidence that some time after the Verner mortgage debts became due, they were not paid, whereupon Verner brought suit to foreclose against the defendant, Fannie S. Hutchins; at that time, it appears, she did not think she had any defence, or for some cause she failed to answer the complaint, and in consequence judgment of foreclosure was about to be entered against her by default, when the plaintiff, T. L. Gibson, again appears upon the scene; and it is then agreed that if he (Gibson) will take up the two Verner notes and mortgages, the defendant, Mrs. Hutchins, will execute to him an absolute deed conveying the premises encumbered by said mortgages, as a security to indemnify him for the amount he is to pay out in settling those debts; and it is agreed that when Gibson is reimbursed, he is to convey the land to the defendant Hutchins. Just in this connection it should be remembered that Gibson was also indebted to Verner, not only as endorser on the $1,000 note, but also on his individual note for $600, which he had himself discounted. These are the circumstances under which the deed was executed. In order to get the money with which to take up this indebtedness, the said Gibson went into negotiation with the defendant bank under the following circumstances as found by the master: "On the 15th day of April, 1893, in settling his (Gibson's) indebtedness to the Seneca Bank for what the bank had advanced for him to J. D. Verner to pay off the amount due Verner by Fannie S. Hutchins, together with other indebtedness to the Seneca Bank with which the said Fannie S. Hutchins had no concern, Gibson gave to the Seneca Bank a mortgage on all the property conveyed

to him by defendant, Fannie S. Hutchins, in the deed above referred to, to secure his note for $5,223.67." * * *

From this decree all parties appealed.

*Messrs. J. W. Shelor* and *R. T. Jaynes*, for plaintiffs.

*Messrs. C. J. Hunt* and *B. M. Shuman*, for Fannie S. Hutchins.

*Mr. Wm. J. Stribling*, for Seneca Bank.

March 6, 1895.   The opinion of the court was delivered by

MR. JUSTICE GARY.   The following statement of facts appears in the "Case:"

"This action was commenced by Thomas L. Gibson against Fannie S. Hutchins, on the 27th of July, 1893, to foreclose two mortgages dated on the 13th of November, 1890, and on the 6th day of December, 1890, respectively.   The mortgage dated the 13th of November, 1890, was made payable to Asa Leathers, T. L. Gibson, and J. A. F. Hutchins for one thousand dollars, the other was made payable to T. L. Gibson for twelve hundred dollars.   And in the same complaint [plaintiff] set up a deed alleged to have been executed by Fannie S. Hutchins to T. L. Gibson, dated on the    day of February, 1892.   The said complaint asked that the mortgages be foreclosed upon the land. The defendant, Fannie S. Hutchins, answered the complaint, alleging among other things that she was a married woman, and the debt complained of was a surety matter, for which she was not liable, and was made for the benefit of her husband and the said plaintiff, T. L. Gibson, and that the mortgages and deed were obtained by undue influence, misrepresentation, fraud, &c.

"An order of reference was issued in this case referring the case to the master, a day fixed for the hearing, and the plaintiffs' attorneys appeared at said reference and moved for a nonsuit.   Thereupon the master refused to take any testimony, and recommended that plaintiffs' counsel be allowed to take a nonsuit by paying the costs, and made his report to the court to that effect.   Thereupon defendant's counsel excepted, and an order was taken by agreement, reversing the master, and mak-

ing Jesse W. Stribling, assignee of Thomas L. Gibson, and J. W. Shelor, agent for creditors, parties plaintiff, the said T. L. Gibson on the 5th day of October, 1893, having made an assignment for the benefit of his creditors. And in the meantime the said assignee and agent advertised and undertook to sell the land in dispute under the alleged deed of F. S. Hutchins to T. L. Gibson. An action was brought by Frances S. Hutchins against the said plaintiff, Gibson, and his assignee and agent, asking for a restraining order, which was granted, and it was agreed between counsel that this case should remain in *statu quo*, and abide the result of the case now before the court.

"After the assignee and agent of T. L. Gibson were made parties-plaintiff, an amended complaint was filed by them, and the defendant, Hutchins, answered said amended complaint, a reference was had and testimony taken, and after the close of the testimony on the part of the plaintiffs and the defendant, Hutchins, the Seneca Bank moved the master for leave to put in an answer, and be made a party defendant, which was granted, and an order passed by the said master to that effect. Thereupon the said Seneca Bank filed an answer, and undertook to set up a mortgage executed by Thomas L. Gibson to said Seneca Bank, dated 15th April, 1893, covering the Hutchins lands in dispute in this action." The facts necessary for a better understanding of this case are set out at length in the decree of his honor, the presiding judge.

We will first consider the rights of the Seneca Bank as assignee of the $1,000 note and mortgage executed by Mrs. F. S. Hutchins, which it bought from J. D. Verner. The notes which were discounted by J. D. Verner were executed while the act of 1887 was of force, which provides that: "All conveyances, mortgages, and like formal instruments of writing affecting her separate estate, executed by a married woman, shall be effectual to convey or charge her separate estate whenever the intention so to convey or charge such separate estate is declared in such conveyance, mortgage or other instruments of writing." No such intention appears in said notes or mortgages. We are, however, of the opinion that no such requirement is necessary under the act of 1887, where the contract

entered into by a married woman was for the benefit of her separate estate. This view is indirectly sustained by the cases of *Reid* v. *Stevens*, 38 S. C., 519, and *Martin* v. *Suber*, 39 *Id.*, 525.

The Circuit Judge in his decree uses this language: "The master finds that 'all the transactions with the two banks, so far as the defendant, Mrs. Hutchins, is concerned, with them, were negotiated for her by her husband, who was acting as her agent in the transactions, she having nothing to do with them except to sign her name to the papers.' I cannot agree with the finding of the master, that 'the negotiations were made for the benefit of the defendant,' nor 'that they were made by her husband while acting as her agent.' This conclusion, so far from being supported by the evidence, seems to me to be just the reverse." The only exceptions of the Seneca Bank are as follows: "1. Because his honor erred in not finding that when the defendant, Fannie S. Hutchins, made and delivered to T. L. Gibson her deed of conveyance absolute on its face to the property described in the complaint, and allowed the same to be put on record and stand thus as the property of the said T. L. Gibson, and the said T. L. Gibson mortgaged said lands to the Seneca Bank for valuable consideration, and the said Seneca Bank had no notice of any condition attached to said deed, but believed that the said property was the property of said T. L. Gibson, she (F. S. Hutchins) is now estopped from denying that said conveyance is absolute. 2. That his honor erred in not finding that the Seneca Bank is entitled to judgment for the whole amount due it on its mortgage."

It will thus be seen that the Seneca Bank did not except to the findings of fact by the Circuit Judge that the negotiations were not made for the benefit of the defendant, Fannie S. Hutchins, and that they were not made by her husband while acting as her agent. These findings of fact must be regarded as conclusive in so far as the Seneca Bank is concerned. The only testimony tending to show that the execution of the note and mortgage by the defendant, F. S. Hutchins, was a contract as to her separate estate, is that the money was received by her husband when the note was discounted by J. D. Verner. If her husband had been her agent, this money

received by him would have made her separate estate liable, provided Verner did not have notice that said money was to be used for a purpose other than for the benefit of her separate estate. It is due Mr. Verner that we should say we do not think he had such notice.

.This note was payable one day after date, and the master finds that it was discounted by J. D. Verner a few days after its execution. The note, when discounted by Verner, was past due, and, therefore, subject to the equities existing between the original parties. "The phrase 'one day after date' is generally adopted to express a due note." *Piester* v. *Piester*, 22 S. C., 140. The Seneca Bank, when it purchased said note and mortgage, and took an assignment thereof from J. D. Verner, took them likewise subject to such equities, and it having been denied, as matter of fact, that the husband of Mrs. F. S. Hutchins was her agent in negotiating the loan with Verner, the Seneca Bank has not the right to recover thereon, by reason alone of such assignment.

We will next consider the right of the Seneca Bank to recover on the mortgage executed in its favor by T. L. Gibson, of the property which, upon the face of the papers, appears to be an absolute conveyance thereof by Mrs. Hutchins to said Gibson. On the 29th of January, 1892, suits were commenced to foreclose the two mortgages executed by the defendant, F. S. Hutchins, hereinbefore mentioned. The summons and complaint were served on the defendant, F. S. Hutchins, and she failed to make answer thereto. The plaintiffs' attorneys therein were about to take and enter up judgment of foreclosure of said mortgage by default, when an arrangement was made between Mrs. Hutchins and T. L. Gibson by which he took steps, and did succeed in stopping said suits.

The presiding judge, in his decree, says: "On the      day of February, 1892, the said Fannie S. Hutchins executed and delivered to T. L. Gibson, in form, an absolute deed of conveyance of the tracts embraced in the two mortgages above alluded to. Although the deed appears on its face to be absolute, it was understood and agreed at the time it was executed, that

the grantor, the defendant Hutchins, was to have the land re-
conveyed to her, upon repaying to Gibson the amount he paid
out in taking up the two mortgages called, for convenience, the
'Verner mortgages.' " The master, in his report, says: "Of
the $5,223.67 secured by this mortgage, $1,643.66 was money
advanced to Gibson to pay J. D. Verner up the amount due
Verner by the defendant, Fannie S. Hutchins. Of this latter,
$72.93 was interest due the Seneca Bank on the $1,590.62 ad-
vanced by it, from the day of advancement to the date of Gib-
son's securing it by this mortgage. The Seneca Bank had no
notice at any time of any condition attached to the deed from
Fannie S. Hutchins to T. L. Gibson, and advanced the money
to him to pay J. D. Verner, on the representation that he had,
or would have, a deed, and subsequently took a mortgage from
Gibson on the land, on exhibition of the deed of Fannie S.
Hutchins to T. L. Gibson, with the chain of title, and suppos-
ing the conveyance to be absolute, as it reported to be, and the
title perfect in all respects."

The mortgage, in form a deed, which Mrs. F. S. Hutchins
executed in favor of T. L. Gibson is governed by the provision
of section 2037 of the General Statutes, as amended in 1891,
which is as follows: "Section 2037. A married woman shall
have the right to purchase any species of property in her own
name, and to take proper legal conveyances therefor, and to
bind herself by contract, in the same manner and to the same
extent as though she were unmarried, which contract shall be
legal and obligatory, and may be enforced at law or in equity
by or against such married woman in her own name apart from
her husband: *Provided,* That nothing herein shall enable such
married woman to become an accommodation endorser, guar-
antor, or surety, nor shall she be liable on any promise to pay
the debt or answer for the default or liability of any other per-
son: *And provided further,* That the husband shall not be liable
for the debts of his wife contracted prior to or after her mar-
riage, except for necessary support, and that of their minor
children residing with her."

This mortgage does not fall within any of the exceptions
mentioned in the proviso of said section, limiting the powers

of a married woman.  It was executed to prevent foreclosure proceedings of a mortgage on this property which she had previously executed.  She had failed to answer the complaint in said proceedings, and judgment of foreclosure by default was about to be taken against her, which, in all probability, would have necessitated a sale of said property, unless she had been able to get some one to do just what Mr. Gibson did to prevent it.  The execution of this mortgage to Gibson was a valid and binding contract on the part of Mrs. Hutchins.  The mortgage executed by T. L. Gibson to the Seneca Bank was valid to the extent of securing the money advanced by said bank to T. L. Gibson to extinguish the mortgage on this property, which had been previously executed by Mrs. Hutchins.  The said mortgage was invalid to the extent of attempting to secure the payment of any other debts due by T. L. Gibson to said bank.  It appears that all the debts outside of the money advanced by the bank to extinguish the Verner mortgage, were contracted by Gibson prior to, and were subsisting obligations at the time of, the execution of the mortgage by Gibson to the Seneca Bank, and, therefore, the bank took subject to all equities existing between the original parties.

As this mortgage was only valid to the extent of securing the payment of money advanced to extinguish the Verner mortgage, and was invalid to the extent of attempting to secure the antecedent indebtedness of the Seneca Bank, we think the reasoning applies even with greater force, in so far as the rights of J. W. Stribling, as assignee of T. L. Gibson, and J. W. Shelor, as agent of the creditors, are concerned.

These views render it unnecessary to decide specifically all the exceptions.

It is the judgment of this court, that for the reasons herein stated the judgment of the Circuit Court be affirmed.