# WHEELING.

## PROTZMAN'S EXECUTOR *v.* JOSEPH.

Submitted September 10, 1908. Decided June 11, 1909.

1.    APPEAL AND ERROR—*Review—Conflicting Evidence.*
   When a decree rests on oral evidence, especially when conflicting, this Court will not reverse it unless plainly wrong. (p. 789.)

2.    EVIDENCE—*Parol Evidence—Assignment of Life Policy.*
   Assignment of a policy of life insurance, though absolute, may be proven to be in truth in trust to secure indebtedness. (p. 790.)

Appeal from Circuit Court, Monongalia County.

Bill by Protzman's Executor against George M. Joseph. Decree for plaintiff, and defendant appeals.

*Affirmed.*

COX & BAKER, GOODWIN & REAY, L. D. BEALL, BELL & FENNIKEN, TERRENCE D. STEWART, and T. SUTTON BOYD, for appellant.

GLASSCOCK & GLASSCOCK, MORELAND & MORELAND, and R. E. L. ALLEN, for appellee.

BRANNON, JUDGE:

Spurgeon H. Protzman took out a policy of insurance on his life for $2,000 in the Equitable Life Assurance Society. He became sick with a serious illness from which he died, and was mentally very weak. He borrowed $162 from the insurance company on the faith of his policy as security. He became unable to pay this debt or to keep up premiums on the policy. He made to George M. Joseph, his first cousin, an absolute assignment of this policy, dated 10th September, 1904. This assignment is the bone of contention in this case. Protzman died 31st March, 1905, leaving a wife and a number of children, and his executor brought a suit against Joseph. The executor's claim in

this suit is that the assignment of the policy, though absolute in terms, was in fact not absolute, but in trust to pay indebtedness of Protzman to Joseph; in trust that Joseph should pay off the debt to the insurance company and the premiums as they fell due, and reimburse him with interest on his expenditures. Joseph's claim, on the other hand, is that Protzman being utterly unable to pay the debt and premiums, contracted with him to make an absolute assignment in consideration that Joseph should pay the insurance company said debt and premiums, and give medical attention to Protzman until he should recover from his malady or die, Joseph being a physician. A decree of the court was that the assignment was collateral to secure indebtedness, a mere trust, to be held by Joseph to repay his money expenditure and compensate him for medical attendance, and after that for the benefit of Protzman. The decree declares that out of the money collected by Joseph under the policy he should be repaid any sums paid by him to the insurance company for the debt for loaned money incurred by Protzman to the insurance company, and for premiums paid by Joseph, and for medical services rendered Protzman by Joseph, and the court referred the cause to a commissioner for an account thereof showing what money was thus due Joseph and what balance going to Protzman's estate.

There was a demurrer to the bill; but we think the bill is good. Counsel for Joseph do not argue it.

The vital question is as to the character of said assignment, whether absolute or as collateral to secure money. Upon this question the evidence is absolutely conflicting. Different judges might reasonably differ about the weight of the evidence. We have carefully considered the evidence in this case, and we have come to the conclusion that we cannot overrule the decision of Judge Mason, because of that principle of general acceptance that we cannot, even in a chancery case, reverse the decision of the lower court unless it shall be manifest to us that the decision is wrong, when decision turns on oral evidence, and more especially when that evidence is conflicting upon vital points. We do not intimate that Judge Mason's decision is wrong. We simply say that were it not for that principle prevailing in appellate courts there might be difference of opinion in this Court as to the effect of the evidence. In view of this decision it be-

comes unnecessary to detail the features of the case or the evidence. What good would it do as a precedent? None. One factor, at the outset, operates forcibly with us. True, the assignment is absolute, and if that fact stood alone, it would be quite potential in influence; but its force is broken by another factor. That factor is, that a few days prior to the execution of this absolute assignment Protzman and Joseph had, made the contract, upon the character of which the evidence conflicts, and they went to the agent of the insurance company in Morgantown for the purpose of having the assignment drawn up. The agent used a blank assignment found in the office of the insurance company, and that assignment is not one of absolute character, but contained a provision that "this assignment shall be void and the interest of the assignee released, upon repayment of the sum of ........ Dollars to said George M. Joseph to secure which this pledge is made." Such an assignment was executed, but the blank for the sum secured was not filled. Why did Joseph accept such a collateral assignment, if the truth was that the assignment was to be absolute? His answer is that there was no form for absolute assignment in the company's office; but though we must take that as a fact under Joseph's evidence and the evidence of the insurance agent, still that does not answer the question, Why did Joseph accept an assignment so vitally different from an absolute transfer? Joseph is a physician evidently very intelligent, judging from his deposition. Why did he accept that assignment? The agent does not say that objection was made to the form of the assignment. He does not say that the parties said that the assignment was absolute. Strange that nothing was said then and there about the form of the assignment, if the collateral form did not represent the contract. The force of this fact grows upon one as he reflects upon it. The very fact of leaving blank the sum is strong in favor of Protzman's executor's claim that it was collateral only, for the reason that it could not then be told what premiums on the policy would have to be paid in future, nor what medical services Joseph would be called on to render, and hence the blank left. If the assignment was to have been absolute, why not strike out from the form its closing clause, distinct from the balance of the instrument, making the assignment only a mortgage? That collateral assignment was

sent to the insurance company in New York and it returned the instrument to Joseph accompanied by a letter saying that the company could not say whether the assignment was absolute or collateral, and suggested that if collateral the sum secured should be inserted in said blank, and that if absolute, the collateral assignment should be cancelled and a new transfer made on the form of absolute transfer enclosed in the letter. Then, Joseph met Protzman and they took the absolute assignment to the insurance office and the insurance agent filled it up, and it was executed there or in the county clerk's office. Did the insurance company's letter suggest an absolute assignment to Joseph, or was it but the true statement in writing of what the contract was at the first? On this vital question there is such conflict as I have above stated. We will not pursue the evidence further. There are some other questions in the case, questions as to overruling the exceptions of the defendant to the admissibility of evidence of the widow of Protzman and other exceptions; but we conclude that taking the evidence, even if we would sustain those exceptions, we should find the same conclusion.

The decree gives Joseph justice, repayment of outlay and pay for a few months professional service.

For these reasons we affirm the decree.

*Affirmed.*