## JORDAN v. NEW YORK LIFE INS. CO.*

### No. 4603.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1933.

Montgomery & Montgomery, of New Orleans, and Nash Johnson, of Shreveport, for appellant.

Dickson & Denny, of Shreveport, for appellee.

TALIAFERRO, Judge.

On April 13, 1912, defendant issued a life policy of insurance to John W. Jordan, wherein Mrs. Jessie F. Jordan, his wife, was designated beneficiary. The insured gave his note for the premium due on delivery of the policy, and on June 18, 1912, for declared value received, he and his wife executed unto J. Homer Jordan, petitioner, an assignment and transfer of the policy, with "all dividends, benefits and advantages to be had or derived therefrom," subject to its conditions, and the rules and regulations of the insurer. This assignment was duly accepted by the company, but no responsibility was assumed for its validity.

The note of the insured for the first premium due under the policy was paid by plaintiff. He also paid all other premiums falling due prior to April, 1932. Since the assignment, the insured has evinced no interest in the policy, nor has he contributed any amount to prevent its lapsing. The policy contains the following stipulations, among others, affecting the rights of the owner in the event of its surrender or lapsing after two premiums were paid, viz.:

"15. Benefits on Surrender or Lapse.— After two full annual premiums shall have been paid, the owner may elect within three months after any default in payment of premium, but not later, either

"(a) To accept the Cash Surrender Value; or,

"(b) To have insurance for the face amount of this Policy plus any dividend additions and less any indebtedness to the Company hereon continue in force from the date of default for such term as the Cash Surrender Value will purchase as hereinafter provided, but without future participation and without the right to loans or Cash Surrender Value. * * * "

The policy also provides that if the insured shall not, within three months after default, surrender the policy for its cash surrender value, as provided therein, the insurance will be continued as term insurance as provided in option (b) quoted above.

In May, 1932, plaintiff, through defendant's Shreveport office, tendered the policy with the request that its cash surrender value be paid him. This was refused, and on June 29th, following, his counsel made demand for like payment of defendant's home office in New York. This demand was also refused on the ground that plaintiff was not the owner of the policy, and, therefore, was not in a position to surrender it and receive its cash value. Defendant amplified its position by saying that the policy was held by plaintiff as collateral security, and that he should foreclose his pledge thereon and thereby acquire ownership thereof in order to be entitled to the settlement by him requested. This suit was then filed by plaintiff to recover the cash surrender value of the policy; he alleging himself to be its owner and vested with the same rights with respect to the subject-matter of his demand as the insured could have been.

Defendant denies that plaintiff was at any time the owner of the policy sued on, and avers that for nonpayment of premium due April 8, 1932, it lapsed; that its cash surrender value was available to the insured, who was owner, for a period of three months thereafter, but he made no request for such a settlement, and, under the express terms of the policy, it is now in force as term paid-up insurance for $3,032 to August 9, 1945. Defendant reiterated its contention that plaintiff held the policy as collateral security for the payment of the amounts advanced by him to keep it in force.

*Rehearing granted December 1, 1933.

From an adverse judgment of the lower court, defendant appealed. Plaintiff, by answer in this court, urges us to declare the appeal frivolous and to inflict upon defendant the statutory penalty of 10 per cent. authorized in such a case.

### Opinion.

The only question at issue in this case is whether plaintiff is owner of the policy sued on. If the assignment to him by the insured and his wife was not in effect a pledge, or a security contract, but on the contrary was made for value, and was such a transfer as vested in him unconditional title to and ownership of the policy, then there can be no question regarding the propriety of his effort to force defendant to pay him its cash surrender value.

In its brief in this court defendant argues a secondary defense, viz.: That if the policy was not assigned for value, then the assignment must be considered as an effort to donate, and for lack of proper form, being under private signature, it is null and void as a donation.

When the policy was assigned to plaintiff, the insured owed him no amount. He paid off the note of the insured, held by defendant's local agent, thereafter. Plaintiff testified that he paid this note and the premiums on the policy in order to keep it alive and to protect the insured's family. Defendant argues that this testimony supports its contention and shows beyond doubt that plaintiff, who is a brother of the insured, had the policy assigned to him as security for the reimbursement of all amounts necessarily advanced to keep the policy alive, and that the transaction was not an outright assignment of the policy.

The right of a pledgee of an insurance policy, who forecloses his pledge and purchases the policy at sheriff's sale, to demand the cash surrender value of such a policy has been upheld. Feliciana Bank v. Union Central Life Ins. Co., 137 La. 675, 69 So. 91.

That case is relied on by plaintiff as supporting his contention that one who acquires ownership of such a policy may demand and receive the cash surrender value thereof. There can be no serious question on this score. The method of acquisition of ownership is not essential. If it can be accomplished by forced sale, it may likewise be accomplished by private assignment.

The assignment in question is unambiguous and, if standing alone, unaffected by testimony to the contrary, would be held to evidence a transfer of title to the policy, without any residuary interest or right in the insured or the beneficiary therein.

The right to inquire into the facts and circumstances of an assignment of this character to ascertain the true intent of the parties and to adduce evidence contrary to the clear and unambiguous language employed therein, is well settled. Jos. P. Page, Adm'r v. Bernard Burnstine, 102 U. S. 664, 26 L. Ed. 268; Mutual Life Ins. Co. v. Houchins et al., 52 La. 1144, 27 So. 657.

To be valid an assignment of a policy of life insurance must have a consideration. Civ. Code, art. 1893; Mutual Life Ins. Co. v. Armstrong, 117 U. S. 597, 6 S. Ct. 877, 29 L. Ed. 997.

When the assignment to plaintiff was executed, according to his own testimony, the insured owed him no amount of money. He took the assignment of the policy to protect himself in the payment of future premiums he then evidently resolved to pay, and, according to his own words, "to protect his (the insured's) family." If plaintiff had acquired an indefeasible title to the policy, or if such was his intention, what protection would this have been to his brother's family in case of his decease? He would have, in such circumstances, been entitled to the entirety of the proceeds of the policy, and not legally obligated to account to any one for same.

When the policy was assigned, it was a few days more than two months old. It had acquired no definite value as an investment, the first premium had not been paid. About the only reason plaintiff could have had, so far as we can see, for taking it over at that time was, as he says, to keep it from lapsing so that the insured's family would have some measure of financial protection thereby in. event of the insured's death. No consideration whatever has been established as a basis for the validity of the transfer of the policy and without a consideration, sufficient in law, the assignment cannot be held to effect a sale of the policy; and when we supplement this lack of proof with plaintiff's testimony, referred to above, it is made manifest that the policy was simply assigned to him as security for any and all amounts he advanced to keep it in force. He did not become the owner of it and, therefore, is not in a position to avail himself of the option to surrender it to defendant and demand its cash surrender value.

The judgment of the lower court is annulled and set aside, and plaintiff's suit is dismissed at his cost; reserving to him all rights to which he is entitled as pledgee of the policy in question.