BROWN v. NEW YORK LIFE INS. CO.
et al.
No. 2642.

District Court, W. D. S. C., Greenwood
Division.
Feb. 8, 1938.

. Butler B. Hare' and Robert H. Hare, both of Saluda, S. C., and Mays & Featherstone, of Greenwood, S. C., for plaintiff.

Thomas, Lumpkin & Cain and H. Bland Hammond, Jr., all of Columbia, S. C., for defendant New York Life Ins. Co.

WYCHE, District Judge.

This is an action by the plaintiff against the defendant New York Life Insurance Company for damages claimed to have resulted in an alleged breach of three insurance contracts issued upon the life of Robert N. Brown. Because he claimed some interest, J. J. Wheeler, Agent, was made a party defendant so that he might set up any rights he might have; but it is alleged by plaintiff that whatever interest he had, it was not superior to that claimed by her in the complaint. He did not appear or answer and is in default.

. The evidence in the case about which there is little dispute is substantially as follows: The defendant insurance company in July, 1919, issued two contracts of insurance insuring the life of Robert N. Brown, one for $2,000, and the other for $5,000; and in October, 1921, issued another policy insuring his life for $10,-000: On November 28, 1921, Brown assigned or pledged his $10,000 contract of insurance to the Farmers Bank of Saluda, and on the 23d day of March, 1922, he pledged or assigned his other two policies to the Bank of Saluda. These assignments were in writing, and in the following form:

"For Value Received, ———, being of legal age, hereby assign and transfer unto ——— of ——— the Policy of Insurance known as No. ——— issued by the New York Life Insurance Company upon the life of Robert N. Brown, of Saluda Co. S. C. and all dividend, benefit and advantage to be had or derived therefrom, subject to the conditions of the said Policy, and the Rules and Regulations of the Company, and to any indebtedness to the New York Life Insurance Company against said Policy ———.

"Witness my hand and seal, this ——— day of ———, nineteen hundred ———."

At the time these assignments were executed and delivered, Brown was indebted

to each bank in large amounts. The consideration named in the assignments is "For Value Received." The only testimony as to the real consideration was that for the plaintiff that the assignments were collateral and made to secure Brown's indebtedness to the banks. There is no evidence that the banks paid Brown any amount directly or indirectly for the assignments, nor was his indebtedness to the banks reduced thereby.

The two banks while holding the assignments, subsequently on June 30, 1927, merged into one corporation which was thereafter known as the Farmers Bank of Saluda, and under this corporate name it came into possession and ownership of the assignments of the three policies.

The insurance company received all premiums on the policies as they became due until the fall of 1931. Most of the premiums were paid by the banks, and, according to plaintiff's witnesses, charged to Brown's account at the bank, but, according to one witness for defendant, to expense because, he said, it was useless to charge them to Brown. Some fraction of the premiums was paid by earned dividends, for the insured elected to have the dividends applied toward payment of the premiums. After merger the bank applied to have these dividends paid to the bank alone.

The insurance company at first contended in its letters to the bank that ordinarily banks are not allowed to buy and sell life insurance policies, and that where a bank is acquiring an interest under a policy it is generally a collateral interest, and if a policy is assigned as collateral security the title of the assignee is not absolute even though the assignment may be absolute on its face, and that the assignee of a policy held by him as collateral is bound to hold the policy as collateral and is prohibited by law from doing anything whatever with the policy except to hold it as collateral in accordance with the terms and purpose of the assignment, and if the policies were assigned to them as collateral security, then, of course, it would be required to deal jointly with the bank and the insured in making any dividend payments, and suggested in one of the letters "if the insured desires to vest in the assignee the right to surrender these policies for the cash surrender value at any time when the same becomes available, or to sell these policies at public or private sale without

notice to him, he should then assign these policies in favor of the Farmers Bank of Saluda, S. C. on the enclosed forms in accordance with the notice printed thereon, then return the same to us for record." These forms were never executed.

The bank contended that the assignments were absolute.

Finally, however, the insurance company decided that "in view of the statements made by the bank" that it would "pay to the bank alone dividends as they become due," and it appears that they were thereafter so paid without the knowledge or consent of the insured.

Later, in June, 1931, the insurance company allowed the bank to exercise the loan value provisions of the policies and made loans to the bank without the knowledge or consent of the insured. The amounts received from these loans were applied to Brown's indebtedness to the bank. There was a default in the payment of the premiums on the policies in September, 1931.

The Farmers Bank of Saluda, subsequent to securing the policy loans from the insurance company in October, 1931, became insolvent, and its assets, including the notes of Robert N. Brown, and the three assignments of the insurance policies, passed into the hands of a receiver. The receiver sued Brown and reduced his indebtedness to judgment which was rendered on December 13, 1932, for the sum of $14,-777.25, without foreclosure or otherwise changing the status of the assignments of the insurance policies. Thereafter, the interest of the bank in the judgment, and the assignments of the policies, along with other assets of the closed bank, were sold to J. J. Wheeler, Agent.

Brown died intestate August 13, 1934, and his widow, the plaintiff Mrs. Sallie Brown, was thereafter appointed and qualified as administratrix of his estate. Mrs. Brown as administratrix made demand upon the insurance company for payment of such sum as might be due to her under the policies. The company denied liability on the ground that upon default in payment of premiums in 1931, the company, under the automatic provisions of the policies, used the accumulated values, less the outstanding policy loans, to purchase extended insurance, and that the term of the extension on each policy had expired before the death of the insured. The company on May 15, 1933, undertook to terminate and cancel the insurance contracts on this

ground. But for the policy loans made by the insurance company to the bank the term of the extension on each policy would have kept it in force for the full amounts far beyond the date of the insured's death.

The insurance policies are payable to executors, administrators, and assigns of the insured, and other pertinent provisions are as follows:

"The Insured may, without the consent of the beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred upon the Insured by this Policy."

"After three full years' premiums have been paid and before default in the payment of premium, the Company will advance to the Insured on the sole security of this Policy as duly evidenced in writing any sum desired,—Provided, the total indebtedness to the Company, including any advance then made, shall never exceed that sum which with six per cent interest to the end of the then current insurance year shall equal the Cash Surrender Value."

At the conclusion of the evidence the defendant New York Life Insurance Company made a motion to direct the jury to find a verdict for the defendant insurance company. By agreement of the parties, I reserved my decision on this motion until after the case had been submitted to the jury and the verdict of the jury was taken subject to my ultimate ruling upon the question reserved. Reservation of decision, under this practice, carries with it authority to make such final disposition of the case as might be made essential by the ruling under the reservation, and I now have authority to enter judgment for the defendant insurance company although the jury has returned a verdict for the plaintiff for amounts totaling the sum of $17,000 actual damages. Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S. Ct. 890, 79 L.Ed. 1636.

The insurance company first contends in its motion for directed verdict that the assignments were absolute and transferred unto the bank the entire title to the insurance contracts.

Ordinarily, in the absence of restrictions to the contrary, a valid life insurance policy payable to insured's executors, administrators, or assigns, is an assignable chose in action, providing the assignment is not forbidden by public policy. Grigsby

v. Russell, 222 U.S. 149, 56 L.Ed. 133, 32 S.Ct. 58, 36 L.R.A.,N.S., 642, Ann.Cas. 1913B, 863.

The rule in South Carolina is that a policy of life insurance valid in its inception may be assigned to one having no insurable interest in the life insured, with the consent of the insured, and the insurer, if the assignment is bona fide and not a device to evade the law against wager policies. Crosswell v. Association, 51 S.C. 103, 28 S.E. 200; Hack v. Metz, 173 S.C. 413, 176 S.E. 314, 95 A.L.R. 196. And that it, like any other chose in action, may be even transferred by parol, unless some unwaivered provision in the policy forbids it. Barron v. Williams, 58 S.C. 280, 36 S.E. 561, 79 Am.St.Rep. 840.

The assignments in this case, while containing no express authority to exercise the loan values, are absolute in form, subject only to the terms of the policy, but the evidence in the case clearly indicates that the real and only purpose of the assignments was to furnish additional collateral security for the payment of Brown's indebtedness to the bank. It would be unreasonable to assume that a bank would engage in the business of dealing, in the first instance, in life insurance policies. The possession of the notes from the insured to the banks raises the presumption that the policies were assigned as collateral security for the payment of the notes. Furthermore, there is no evidence that the banks bought the assignments or paid anything for them, nor was Brown's indebtedness lessened thereby. The transaction had its origin in the fact that Brown was indebted to the bank. The testimony of officers of the banks showed conclusively that the assignments were made to secure Brown's indebtedness to the banks.

Generally, parol testimony is incompetent to vary or contradict the terms of a written instrument, but there are various exceptions to the rule, one of which is the right to admit parol testimony to show that a written instrument purporting on its face to be an absolute transfer of property was in fact intended by the parties as security for a debt. Page v. Burnstine, 102 U.S. 664, 26 L.Ed. 268; Babcock v. Wyman, 19 How. 289, 15 L.Ed. 644; Brick v. Brick, 98 U.S. 514, 25 L.Ed. 256; New York Life Insurance Co. v. Rees, 8 Cir., 19 F.2d 781; Jordan v. New York Life Insurance Co., La.App., 150 So. 419; Welborn v. Dixon, 70 S.C. 108, 49 S.E. 232,

3 Ann.Cas. 407; Brownlee v. Martin, 21 S.C. 392; Carson v. National Life Insurance Co., 161 N.C. 441, 77 S.E. 353; Aldrich v. Brinker, D.C., 143 F. 563; Protzman's Exors. v. Joseph, 65 W.Va. 788, 65 S.E. 461; 22 C.J. 1269. Furthermore, as Judge Parker said in the case of Deutser v. Marlboro Shirt Company, 4 Cir., 81 F.2d 139, 142: "The recitals of a written instrument as to the consideration received are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was." I admitted testimony under these authorities to prove the true consideration for the assignments.

■ But the insurance company says that plaintiff is estopped from asserting any claim under the insurance contracts because the insured transferred the title to the bank by an absolute assignment. It is quite evident that the insurance company doubted that the assignments were absolute as shown by the statements made in its several letters. In one letter the insurance company said: "The bank is attempting to claim that the company has stated that these policies are absolutely assigned to them. The company has no knowledge of the conditions surrounding any assignments. It simply stated that the assignments submitted to us appear on their face to be absolute assignments." In this letter the insurance company went on to say: "Ordinarily, banks are not allowed to buy and sell life insurance policies. Where a bank is acquiring an interest under a policy it is generally a collateral interest." Further on in this letter the insurance company asserted: "If the policy is assigned as collateral security the title of the assignee is not absolute, even although the assignment may be absolute on its face." And, later in the same letter, announced this principle: "The assignee of a policy held by him as collateral is bound to hold the policy as collateral and is prohibited by law from doing anything whatever with the policy except to hold it as collateral in accordance with terms and purpose of the assignment." And, finally in this letter said: "Under these policies, the insured elected to have the dividends applied toward payment of the premiums. This option has never been changed, and still remains in force. If the Bank holds only a collateral interest in the policies they would not have authority to change this option. The change would have

to be applied for by both the insured and collateral assignee." In another letter the insurance company said: "The assignments appear on their faces to be absolute, but if the insured desires to vest in the assignee the right to surrender these policies for cash surrender value at any time when the same becomes available, or to sell these policies at public or private sale without notice to him, he should then assign these policies in favor of The Farmers Bank of Saluda, South Carolina, on the enclosed forms in accordance with the notice printed thereon, then return the same to us for record," and instructed the bank about the matter of execution of the additional instruments in event they met with insured's approval. These instruments were never executed by the insured, and this fact should have caused the insurance company to question further the purpose of the assignments.

■ The assignments having been executed and delivered in South Carolina are governed by the South Carolina law, under which an insurance policy is assignable, but not negotiable. Section 398, South Carolina Code for 1932, relative to assignment of a thing in action, is as follows: "In the case of assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment." In Westbury v. Simmons, 57 S.C. 467, 35 S.E. 764, 769, Westbury, as administratrix of one Rentz, brought suit against Simmons to recover the face value of an insurance policy, less a small amount advanced by him to pay premiums on the policy during the lifetime of Rentz. Rentz had assigned the policy to Rion upon condition that he would pay the annual premiums, and upon the further condition that he was only to hold the policy as collateral security for money expended in the payment of premiums with interest thereon. Thereafter Rion assigned the policy to Simmons, who alleged that it was assigned as collateral security for all the indebtedness due him by Rion, and that the entire proceeds of the policy had been applied on the indebtedness of Rion to him. The South Carolina Supreme Court in deciding the question said: "We will next consider whether the action of Rentz was such as might reasonably have been expected to induce a person to purchase from his assignee, Rion, without making inquiry as to the consideration upon which the assignment was made by Rentz to Rion. The form of the

88

assignment is as follows: 'For value received, I hereby assign and set over unto A. T. Rion all of my right, title, and interest in the within policy. Witness my hand and seal this 15th day of January, A. D. 1891. W. H. Rentz. (L.S.)' The principle is well settled in this state that the assignee of a nonnegotiable chose in action takes it subject to the equities existing between the original parties, Patterson v. Rabb, 38 S.C. 138, 17 S.E. 463, 19 L.R.A. 831; Gibson v. Hutchins, 43 S.C. 287, 21 S.E. 250; The British Amer. Mtge. Co. v. Smith, 45 S.C. 83, 22 S.E. 747; Pittman v. Raysor, 49 S. C. 469, 27 S.E. 475. The form of assignment by Rentz to Rion was such as is usually and ordinarily employed in transferring the title to nonnegotiable instruments, and we see nothing upon the face thereof that could reasonably have been expected to mislead Simmons, he being presumed to know that the assignee of a nonnegotiable chose in action takes it subject to the set-offs and defenses existing at the time of the assignment." See, also, Noland v. Law, 170 S.C. 345, 170 S.E. 439, and Corning Bank & Trust Company v. Foster, 1934, 189 Ark. 655, 74 S.W.2d 797. The insurance company had knowledge sufficient to put it on inquiry as to the true intent of the assignments. Missouri State Life Insurance Co. v. Langreder, 7 Cir., 87 F.2d 586.

But the insurance company insists that even if the assignments were collateral assignments and made merely to secure Brown's indebtedness to the bank, under such collateral assignments the insurance company still had the authority to make the policy loans to the bank without the consent of Brown.

Where a policy has been assigned to a creditor as collateral security to a debt, he is entitled to hold such collateral security until his debt has been paid. In case of the death of the insured, the creditor may retain from the proceeds the amount of his debt, together with such sums as will reimburse him for premiums and other necessary expenses incident to the policy paid by him, leaving to others entitled thereto only such sum as may be left after satisfaction of his claim. The pledgee of an insurance policy, who holds it as collateral, in the absence of a definite provision permitting its sale, has only the right to collect, and he has not the right to sell or surrender it. Cooley's Briefs on Insurance, § 6526; Toplitz v. Bauer, 161 N.Y. 325, 55 N.E. 1059, 1061; Jordan v. New York Life Ins. Co., La.App., 150 So. 419; Missouri State Life Insurance Company v. Langreder, 7 Cir., 87 F.2d 586; Emery v. Manhattan Life Insurance Co., 179 Ky. 76, 200 S. W. 19, L.R.A.1918C, 568; Grossman v. Lindemann, 67 Misc. 437, 123 N.Y.S. 108.

Upon this point the Court of Appeals of New York said in the case of Toplitz v. Bauer: "The contract of bailment, whereby personal property is deposited or pledged as security for a debt, creates duties and relations peculiar to itself. These duties and relations are governed more by the general maxims of equity than by the strict rules of the common law. It has been said that the pledgee occupies the position of a trustee for the owner, to pay the debt first, and then the surplus over to the pledgor. He is not permitted to deal with the trust property in such a way as to destroy or impair its value. Gillet v. Bank, 160 N.Y. [549], 560, 55 N.E. 292. It is quite certain that the law imposes duties upon the pledgee quite analogous to those existing in all trust relations."

In the Jordan Case the Louisiana court held that the assignee was not the owner of the policy and, therefore, not in position to avail himself of the option to surrender it to the defendant and demand its cash surrender value. The effect of this decision in a case very similar to the case at bar is that a pledgee does not have the right to exercise the options relative to loans and cash surrender value. On a rehearing this case was reversed, La.App., 152 So. 778, but the reversal does not change the pronouncement of the court relative to the limitation on the rights of a pledgee of an insurance policy.

In the Langreder Case, the insurance company urged that the written assignment conveyed the legal title of the policy to the bank, as assignee, and that it, as the holder of the legal title, could exercise any of the options contained in the policy when they became available. The court in deciding this question held that an insurance policy is but a chose in action and is governed by the same principles applicable to choses in action in general. It further decided that a policy is not negotiable either by the common law or the statutes of Illinois so as to vest the legal title in the assignee. Though an assignment form was used and the transaction in both cases is spoken of as an assignment, there was, in fact, merely a pledging of the policy in both cases and no absolute assignment. Under the law of South

Carolina, as well as under the law of Illinois, title to a pledge remains in the pledgor and in both these cases the title to the insurance policy remained in the pledgor. The Langreder Case is similar to the case here not only in the similarity of the wording of the assignments, each purporting to transfer all benefit and advantage to be derived from the policies, but also in the provisions of the policies relative to the making of policy loans and the surrender for cash. In each of these policies these privileges are allowed under the exact wording of the policies to "the insured" as distinguished from a broader provision in many policies which allow these privileges to the holder of the policies or to the insured and his assigns.

The Supreme Court of South Carolina in the case of Hodges v. Lake Summit Company, 155 S.C. 436, 152 S.E. 658, 663, decided that the pledgee of a note has only a special property or lien while the general property in the note remains in the pledgor. That court quotes the following authorities as the law in the case:

"In 21 R.C.L. 649, it is said: 'With regard to the respective rights of the parties to a contract of pledge, it is well settled that *the general property in the thing pledged remains in the pledgor,* and only a special property vests in the pledgee. While he has the right to retain the property pledged until the debt for which it was pledged is fully satisfied or has been otherwise discharged, the pledgee acquires no interest in the property except as a security for his debt, and even where the legal title to incorporeal property such as corporate stock is transferred to a pledgee as collateral security, he takes only a special property therein, as such transfer merely performs the same office that the delivery of possession does in case of a pledge of corporeal property, and the nature of the contract is not changed. The general property in the pledge remains in the pledgor

after as well as before default. The default of the pledgor to pay his debt at maturity, in no way affects the nature of the pledgee's rights concerning the property pledged, except that he then becomes entitled to proceed to make the security available in the manner prescribed by law or by the terms of the contract.'

"In Gregg v. Bank, 72 S.C. 458, 52 S.E. 195, 197, 110 Am.St.Rep. 633, the court said: 'The ordinary relation of pledgor and pledgee imports general ownership of the pledge by the pledgor, *and a special property or lien* of the pledgee accompanying the possession.' "

The manner prescribed by the South Carolina law to make available the "special property or lien" created by the pledge is for the pledgee to bring an action in a court of equity to foreclose the lien made by the pledge, or proceed under the state hypothecation statute.[1] Hodges v. Lake Summit Co. supra; Jordan v. Hudgens, 146 S.C. 209, 143 S.E. 811; Cooper-Smith Co. v. Bell, 137 S.C. 1, 134 S.E. 658; Fretwell v. Carter, 78 S.C. 531, 59 S.E. 639.

In any view of the case, since the lien of the pledge in this case was never foreclosed as required by the South Carolina law, the bank never became the owner of the insurance contracts, but remained a mere pledgee without the right to exercise the loan provisions or to impair otherwise the value of the policies. New York Life Ins. Co. v. Rees, 8 Cir., 19 F.2d 781.

The defendant insurance company next asserts in its motion for a directed verdict that plaintiff should have sought relief by a suit in equity to set aside the assignments before bringing this action. No authorities are cited to sustain this contention, and I know of none. The assignments are merely parts of the complete agreement, which fact plaintiff had the right to prove at the trial of the cause.

---

[1] Section 8715, Code of Laws of South Carolina 1932: "When any personal property under pledge, mortgage or hypothecation is to be sold for the purpose of satisfying the loan or debt secured by such pledge, mortgage or hypothecation, the pledgee, mortgagee or person holding the instrument showing the hypothecation shall advertise the time and place of said sale by posting a notice thereof, in writing, at least fifteen (15) days before such sale in three (3) public places in the county in which such personal property may be found, one of which shall be the court house door, or shall publish the same at least two weeks in a newspaper published in his county, unless the person making such pledge, mortgage or hypothecation, or his legal representative, shall consent, or shall have consented, to a sale in some other mode or at some other notice, such consent to be expressed in writing."

The insurance company next insists that plaintiff has no right to bring this action in view of the interest of J. J. Wheeler, Agent, in the policies. Under the law of South Carolina, every action must be prosecuted in the name of the real party in interest. Code of Laws, South Carolina, 1932, § 397. "Under statutes requiring every action to be prosecuted 'in the name of the real party at interest' it has been held that either the pledgor or the pledgee may sue in his own name to enforce a pledged chose in action." 49 C.J. 1028. It seems to be the law that: (1) Where a cause of action is assigned as collateral, the assignor retains a sufficient interest in the claim to enable him to sue thereon in his own name, and, if successful, he holds the proceeds as trustee for the assignee to the extent of his interest. Collins v. McWilliams, 185 App.Div. 712, 173 N.Y.S. 850. (2) The pledgor may sue in his own name even when the face value of the assigned chose is not greater than the face of the debt for which the chose has been assigned as collateral. Graham v. Light, 4 Cal.App. 400, 88 P. 373. It has also been decided that "in an action by the pledgor the pledgee is a necessary party where he retains an interest in the pledged chose in action, but not where he has transferred his interest." 49 C.J. 1029.

As a note to this statement the Graham Case is cited as an illustration as follows: "For example, under Code Civ.Proc. Sec. 389, authorizing the court to bring in necessary parties, the pledgee of a note should be brought in as a party to an action by the pledgor thereon, where the pledgee still retained an interest at the time of the trial."

It is true that Wheeler, Agent, would not have had a right to maintain this action against the insurance company in view of the participation of his assignor in the making of the unauthorized loans, but it is perfectly clear that plaintiff does have the right to maintain the action, and that it was proper in view of the alleged interest of Wheeler, Agent, to bring him in as a party defendant.

For the foregoing reasons, it is my opinion that the insurance company did not have the right under the policies and the facts of this case to make the loans to the bank, nor to charge the amount of the loans against the accumulated values in the policies. When the company, to the contrary notwithstanding, made the loans and charged the amounts of the same against the values of the policies, pronounced that the policies had been canceled by virtue of the combined effect of nonpayment of the loans and default in the payment of the premiums, and later denied all liability under the policies when demand for payment was made by Brown's administratrix, the contracts of insurance were breached.

The insurance company finally contends that even if it breached the contracts the plaintiff has suffered no damages. It bases this contention upon the theory that the insured had pledged the policies to the bank, and was indebted to it, or its successor, at the time of his death in an amount greater than any sum that could be recovered on the policies. Therefore, says the insurance company, whatever is recovered under the policies must be paid to Wheeler, the bank's successor, under the collateral assignments. And then says, that neither the bank nor Wheeler, its successor, can recover anything under the policies because the bank applied for and received the loan values, the withdrawal of which, with failure to pay subsequent premiums, lapsed the policies. Combining its own breach of the policies with the bank's breach of the pledge of them, the insurance company plausibly argues that these concurrent wrongs make each a wrong without an injury. Analyzed, this contention asserts that because the bank breached its pledge-contract with the insured that wrong completely releases the insurance company from damages for its breach of the policy contracts.

Whatever may be the existing rights and remedies between plaintiff and Wheeler with respect to the proceeds of the policies is of no concern to the insurance company, and it cannot avail itself of any such supposed right or remedy as a defense to its own liability for its breach of the contracts. If the plaintiff recovers, the proceeds become estate funds, to be administered under applicable law. Neither the plaintiff nor the insured did anything to cause the insurance company to breach its contract. The insurance company received the premiums, which premiums built up the policy values that entitled the insured to extended insurance beyond the period of his death, and it makes no difference to the insurance company whether Wheeler

or the plaintiff finally receives the proceeds of this judgment. The insurance company is only concerned that it pay the proceeds of the policies to the one entitled to receive them, and be discharged from any further liability on the policies. Wheeler, successor to the bank, being a party to this action under allegations in the complaint, as well as in the answer of the insurance company, that he holds the policies, claims an interest, but has none, the proof disclosing that he has none, and being in default will be estopped by the judgment herein from asserting any claim under the insurance contracts against the insurance company hereafter. This is a controversy between plaintiff and the insurance company. The case was removed to this court on the ground that the controversy was wholly between plaintiff and the insurance company. The action is one for damages for breach of contract and not a suit on the policies. If the judgment rendered in this action is paid, it may result in a controversy between Wheeler and the plaintiff, but with that controversy this court is not now concerned.

If the insurance contracts had not been breached, the insurance company would have paid the face of the policies either directly to the administratrix, or jointly to the administratrix and Wheeler, and such an amount as Wheeler would have received from such settlement would necessarily have been credited as payments on his claims against Brown's estate, and the plaintiff would thereby have been relieved of liability of that much of the estate's indebtedness. To be deprived of these credits, irrespective of whether any amount above the indebtedness will be available in cash in the hands of the administratrix, is damage to the plaintiff.

I cannot escape the conclusion that, under the evidence and the applicable law, the motion for a directed verdict must be denied.

This defendant also moved for a new trial on practically the same grounds as its motion for a directed verdict.

For the same reasons, and it further appearing that no error prejudicial to the defendant insurance company has been made, the motion for a new trial will be overruled.

Counsel may present an order in accordance with the views herein expressed.